785 A.2d 491

Edward Keyse MACE,

v.

ATLANTIC REFINING & MARKETING CORP., A Subsidiary of Atlantic Petroleum Corp., Appellant,

and

Bassam Barqawi, t/a A–Plus Mini Market and Bobby Perry, Appellee,

and

Bobby Perry.

Supreme Court of Pennsylvania.

Argued Oct. 17, 2000.

Decided Dec. 12, 2001.

William J. Taylor, Philadelphia, for Atlantic Refining & Market Corp.

James W. Daly, Philadelphia, for Bob Perry.

Richard K. Hohn, for Bassam Barqawi.

Michael I. McDermott, Philadelphia, for Edward Keyse Mace.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

NIGRO, Justice.

Appellee Bassam Barqawi, t/a A–Plus Mini Market, ("Barqawi") operated an A–Plus convenience store and gas station ("A–Plus") in Philadelphia pursuant to a franchise agreement and a real estate lease with Appellant Atlantic Refining & Marketing Corporation ("Atlantic"). Under the franchise agreement and real estate lease (collectively "Agreement and Lease") signed by the parties, Barqawi took sole possession and control of the premises on April 1, 1992. The terms of the Agreement and Lease required Barqawi to indemnify and defend Atlantic from all personal injury lawsuits arising out of Barqawi's operation of the store, unless the injury was caused solely by the negligence of Atlantic. The indemnity provision in the franchise agreement provided:

SECTION 12   Indemnity and Insurance

12(A) Franchisee [Barqawi] agrees to indemnify, hold harmless *and defend ATLANTIC from and against all claims losses and damages for personal injury* or death, or damage to property, occurring on the Premises, or arising out of Franchisee's use or occupancy of the Premises, or arising out of Franchisee's use, custody or operation of the Store, Store equipment, Loaned Store Equipment, or any other equipment on the Premises *excepting any damage or loss caused solely by the negligence of Company [Atlantic] or solely by Company's failure to perform its obligations hereunder.*

A–Plus Mini Market Franchise Agreement, p. 13, R.R. at 127a (emphasis added).[1] The indemnity provision in the real estate lease provided:

1. Section 12(B) of the franchise agreement also required Barqawi to procure and maintain various types of insurance, including a general liability policy with contractual liability, insuring the indemnity provision set forth in Section 12(A) of the franchise agreement. *See* Section 12(B)(2), A–Plus Mini Market Franchise Agreement, p. 13, R.R. at 127a. The franchise agreement further required Barqawi to name Atlantic as

15  *Indemnity and Insurance*

a.  *Indemnity.* Lessee [Barqawi] agrees to indemnify, hold harmless *and defend Lessor [Atlantic] from and against all claims, losses and damages for personal injury* or death or damage to property or clean up costs and fines occurring on the Premises, arising out of Lessee's use or occupancy of the Premises, or arising out of Lessee's use, custody or operation of the Store Equipment, Loaned Equipment, or any other equipment on the Premises *excepting any damage or loss caused solely by the negligence of Lessor or solely by Lessor's failure to perform its obligations hereunder.*

A–Plus Mini Market Premises Lease, p. 10, R.R. at 152a (emphasis added).[2]

Barqawi employed Bobby Perry ("Perry") as a stock clerk at A–Plus. Perry was working during the early morning hours of May 31, 1992, when he got into an altercation with a customer, Edward Keyse Mace ("Mace"). Although the parties disagree about how the altercation actually evolved, it is undisputed that Perry severely beat Mace with an aluminum baseball bat in the A–Plus parking lot. Mace subsequently commenced a personal injury action against Perry, Barqawi and Atlantic for injuries resulting from the attack. In his complaint, Mace alleged that Perry committed assault and battery when he attacked him with the baseball bat. Mace further alleged that Barqawi was vicariously liable as Perry's employer, and that Barqawi failed to provide a safe facility and negligently hired, supervised and trained Perry. Finally, Mace alleged that Atlantic was vicariously liable as the franchisor of A–Plus, and was negligent for failing to properly supervise the operations of the franchise. Atlantic filed cross-claims against Barqawi for contractual indemnity and breach

an additional named insured under the general liability insurance policy. *Id.*

2.  Like the franchise agreement, the premises lease required Barqawi to procure and maintain a general liability insurance policy naming Atlantic as an additional insured and insuring the liability provisions set forth in Paragraph 15(a) of the premises lease. *See* Paragraph 15(b), A–Plus Mini Market Premises Lease, p. 10, R.R. at 152a.

of contract, asserting that Barqawi had an obligation under the Agreement and Lease to defend Atlantic against the claims asserted by Mace. Barqawi then filed a cross-claim against Atlantic pursuant to Pa.R.C.P 2252(d).[3]

Relying on the terms of the Agreement and Lease, Atlantic filed a motion for summary judgment arguing that, as a matter of law, Atlantic was not liable in any manner to Mace for the injuries he sustained when Perry beat him with a baseball bat in the A–Plus parking lot. On May 29, 1996, the trial court granted Atlantic's motion for summary judgment and dismissed all claims and cross-claims against Atlantic. Atlantic, however, continued to pursue its cross-claims against Barqawi for defense costs and legal fees that it expended in defending itself in the underlying personal injury action. On March 14, 1997, the trial court concluded as a matter of law that, under the Agreement and Lease, Barqawi had no obligation to defend Atlantic in the personal injury action instituted by Mace. Based on this ruling, the trial court dismissed Atlantic's cross-claims against Barqawi.[4]

On appeal, a majority of the Superior Court affirmed. In finding that Barqawi was not obligated to defend Atlantic, the Superior Court majority relied on the *Perry–Ruzzi* rule, which provides that if a party seeks to indemnify itself against its own negligence, the language seeking to do so in the indemnification provision must be clear and unequivocal. *See Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 7, 588 A.2d 1, 4 (1991)(reaffirming *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907)). Judge Hester dissented, taking the position that the *Perry–Ruzzi* rule was not applicable to the instant case because Atlantic was not attempting to recover for its own negligence. Judge Hester concluded that, under the Agreement and Lease, At-

---

**3.** Pa.R.C.P. 2252(d) provides that a cross-claim against a co-defendant may include a claim that such party is alone liable to the plaintiff, or jointly or severally liable to the plaintiff, or is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

**4.** On that same date, immediately after the court issued its decision regarding Atlantic's cross-claims against Barqawi, Perry and Barqawi finalized a pre-trial settlement with Mace for $100,000.

lantic was entitled to be reimbursed for Barqawi's failure to defend Atlantic.

On appeal to this Court, Atlantic argues that the Superior Court erred when it affirmed the trial court's decision that Barqawi had no obligation to defend Atlantic when Mace sued Atlantic for injuries caused by Barqawi's employee on the A–Plus premises.[5] Atlantic argues that the *Perry–Ruzzi* rule is not applicable to the instant case, and that the indemnity provisions in the Agreement and Lease are enforceable against Barqawi. Atlantic asserts that when basic contract principles are applied to the Agreement and Lease, it is clear that Barqawi is responsible for paying the costs that Atlantic incurred in defending itself from the personal injury suit instituted by Mace. We agree with Atlantic, and therefore reverse.

In *Perry v. Payne*, a building contractor ("Contractor") agreed to construct a building for a property owner ("Owner"). 217 Pa. at 254, 66 A. at 553. The terms of the contract required Contractor to execute and deliver an indemnity bond, thereby indemnifying Owner for injuries or damages sustained by laborers or third parties during construction. Before Contractor completed construction of the building, Owner regained partial possession of the property and placed his employees in charge of the building, including the elevators. While an employee of Contractor's subcontractor was painting a wall inside an elevator shaft, an employee of Owner negligently lowered the elevator, killing the employee inside the elevator shaft. The estate of the decedent recovered a judgment against Owner, who then tried to recover on Contractor's bond for indemnity. On appeal, this Court held that the indemnity provision of the contract did not apply to injuries

**5.** Whether a court has correctly interpreted a writing and properly determined the legal duties that arise therefrom is a question of law. *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 263, 705 A.2d 422, 426 (1997). Questions of law are afforded full appellate review and are not limited to abuse of discretion review. *In re Estate of Livingston*, 531 Pa. 308, 317 n. 2, 612 A.2d 976, 981 n. 2 (1992). Thus, as with any review of a question of law, our scope of review in the instant case is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

resulting from the negligence of Owner or his employees while Owner was in possession of the building. *Id.* at 262–63, 66 A. at 556–57. In so holding, the Court stated that an indemnity contract against personal injuries "should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms." *Id.* at 262, 66 A. at 557. This rule of construction was subsequently reaffirmed by this Court in *Ruzzi v. Butler Petroleum Co.,* which made clear that the rule is reserved only for instances where a party seeks indemnification for its own negligence. *Ruzzi,* 527 Pa. at 9, 588 A.2d at 5.

As Judge Hester concluded in his dissent below, the *Perry–Ruzzi* rule is simply not applicable to the instant case because Atlantic is not seeking to relieve itself of responsibility for its own negligence. Atlantic did not fail to perform any of its obligations under the Agreement and Lease. Instead, Atlantic was merely *charged* with negligence based on the actions of Perry, one of Barqawi's employees. As the Superior Court recognized, Atlantic was "loosed of all tort responsibility in the underlying case" when the trial court granted Atlantic's motions for summary judgment, thereby dismissing with prejudice all claims and cross-claims against Atlantic. *Mace v. Atlantic Refining & Marketing Corp.,* 717 A.2d 1050, 1051 (Pa.Super.1998). Since Atlantic was adjudicated a non-negligent party, the *Perry–Ruzzi* rule is, by definition, not relevant here.

Barqawi argues, however, that the *Perry–Ruzzi* rule should be expanded to become an overarching principle that is applied every time a potential indemnitee, such as Atlantic in this case, is charged with negligence. According to Barqawi, whenever an indemnitee is charged with negligence, the indemnification agreement must pass muster under the *Perry–Ruzzi* rule regardless of whether the indemnitee is actually found to be negligent.[6] Barqawi argues that such a rule would

6. Thus, Barqawi argues that he was not obligated to defend Atlantic when Mace charged Atlantic with negligence because the Agreement and Lease did not clearly provide that Barqawi must indemnify and defend Atlantic when it is *charged* with negligence.

allow litigants to determine from the outset of a claim the nature and extent of their indemnification and defense obligations and their expectations for recovery of indemnification and defense costs. We disagree.

We rejected a similar attempt to extend the scope of the *Perry–Ruzzi* rule in *Topp Copy Products, Inc. v. Singletary*, 533 Pa. 468, 473–74, 626 A.2d 98, 100–01 (1993). In *Topp Copy*, the appellee maintained that the Superior Court properly applied the *Perry–Ruzzi* rule when interpreting the validity of an exculpatory clause in a commercial lease. We disagreed and explained that the *Perry–Ruzzi* rule is a rule of contract interpretation for clauses that relieve a party of responsibility for its own negligence, which is applied only in the unique circumstances of an indemnity arrangement. *Topp Copy*, 533 Pa. at 474, 626 A.2d at 101. Thus, *Topp Copy* essentially reaffirmed that the *Perry–Ruzzi* rule should be limited to those situations where an indemnitee is attempting to recover for its own negligence.

In addition to the fact that our Court has consistently limited the applicability of the *Perry–Ruzzi* rule, we note that expanding the rule in the manner suggested by Barqawi would also unfairly preclude innocent indemnitees from obtaining indemnification under standard indemnity language. Parties simply charged with negligence, even though subsequently found not liable, would be precluded from recovering defense costs. In effect, expanding the *Perry–Ruzzi* rule to encompass situations where a party is merely alleged to have been negligent would render indemnification meaningless, as even a completely frivolous negligence action filed against an indemnitee would automatically eradicate an otherwise valid indemnification provision. Thus, we reject Barqawi's argument that the *Perry–Ruzzi* rule should be expanded and instead find that the rule should continue to be applied only in those instances where a party seeks indemnification for its own negligence.

Since the *Perry–Ruzzi* rule is not applicable here, we must look to general principles of contract interpretation to determine whether Barqawi had an obligation under the

Agreement and Lease to defend Atlantic from the personal injury lawsuit initiated by Mace. A franchise agreement is a contract to be interpreted under contract principles. *See Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 507–12, 351 A.2d 207, 210–13 (1976)(analyzing franchise agreement under Pennsylvania contract law). Likewise, a lease is a contract and is also to be interpreted according to contract principles. *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 200, 519 A.2d 385, 389 (1986). A fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties. *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.,* 559 Pa. 56, 65, 739 A.2d 133, 137 (1999) (citations omitted). "It is firmly settled that the intent of the parties to a written contract is contained in the writing itself." *Id.,* 739 A.2d at 138. When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone. *Steuart v. McChesney,* 498 Pa. 45, 49, 444 A.2d 659, 661 (1982). *See J.K. Willison, Jr. v. Consolidation Coal Co.,* 536 Pa. 49, 54, 637 A.2d 979, 982 (1994)(contract terms must be construed as manifestly expressed by the parties and according to the accepted and plain meaning of the language used by the parties).

Here, the clear and unambiguous language of the Agreement and Lease provided that Barqawi must defend Atlantic in all claims for personal injuries arising out of Barqawi's use, occupancy, custody or operation of A–Plus, unless the injuries were caused solely by the negligence of Atlantic. There is no question that Mace's claim arose out of Barqawi's use, occupancy, custody or operation of A–Plus. Barqawi was in sole possession of the premises and operated A–Plus as a franchisee of Atlantic. Moreover, Barqawi controlled the hiring and supervision of all employees, including Perry, who severely beat Mace with a baseball bat in the A–Plus parking lot. It is also clear that Mace's injuries were not caused by the sole negligence of Atlantic. As noted above, the trial court granted Atlantic's motion for summary judgment in Mace's underlying personal injury action, thereby holding as a matter of law that Atlantic was not negligent. Given these circumstances, and the plain language of the Agreement and

Lease, Barqawi was clearly required to defend Atlantic in Mace's personal injury suit. Since Barqawi failed to do so, Atlantic is entitled to recover the costs expended in defending the lawsuit. *See* RESTATEMENT (SECOND) OF CONTRACTS § 346 (1981)(injured party has a right to damages for any breach by a party); *id.* § 347 (contract damages normally are based on party's expectation interest and put the injured party in a position as if the breaching party had performed as required); *see, e.g., Gedeon v. State Farm Mutual Automobile Ins. Co.,* 410 Pa. 55, 59, 188 A.2d 320, 322 (1963)(based on usual contract remedy of expectation damages, recovery for breach of duty to defend will ordinarily be costs of defense).[7]

Based on the above analysis, we conclude that the Superior Court erred when it construed the indemnity provisions in the Agreement and Lease under the *Perry–Ruzzi* rule. Atlantic is not seeking indemnification for its own negligence but rather, is only seeking reimbursement for Barqawi's failure to defend it as required by the Agreement and Lease. . Applying basic contract principles, we find that Barqawi failed to perform its obligations under the Agreement and Lease and is therefore responsible for reimbursing Atlantic for the counsel fees that Atlantic was forced to expend in defending itself from the lawsuit initiated by Mace. Accordingly, the Order of the Superior Court is reversed, and this matter is remanded to the trial court for a determination of reasonable counsel fees for Atlantic. Jurisdiction relinquished.

Justice CAPPY files a dissenting opinion in which Justice CASTILLE joins.

Justice SAYLOR files a dissenting opinion.

7. Barqawi attempts to evade liability for Atlantic's defense costs by arguing that Atlantic "voluntarily" incurred legal expenses due to its decision to pursue its cross-claims against Barqawi. This argument completely ignores the fact that Atlantic incurred the expenses only after Barqawi breached its duty to defend Atlantic in the lawsuit initiated by Mace, thereby forcing Atlantic to defend itself in order to avoid summary judgment being entered against Atlantic in favor of Mace. Rather than "voluntarily" incurring unnecessary costs of extended litigation, Atlantic simply pursued its cross-claims after Barqawi refused to comply with the terms of the Agreement and Lease.

CAPPY, Justice, dissenting.

I respectfully dissent. I cannot agree with the majority's interpretation of the *Perry–Ruzzi* rule, a rule of contract construction peculiar to indemnification provisions which states that, where such a provision purports to indemnify a party against its **own** negligence, it must do so in language that is clear and unequivocal. *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907); *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991).

The majority holds that this rule of construction is inapplicable here, notwithstanding the fact that Atlantic invokes a contractual indemnification provision to recover the litigation costs it incurred in defending a negligence action brought against it (as well as against Barqawi and against Barqawi's employee, who actually committed the underlying battery). The controlling fact in the majority's rejection of the *Perry–Ruzzi* rule is the fortuity that, by the time Atlantic sought to enforce its indemnification right, a final legal determination had been made in the underlying tort action that Atlantic was not negligent. The fact that the third party plaintiff in the tort action **alleged** that Atlantic had been negligent became irrelevant once Atlantic prevailed on its summary judgment motion. Atlantic's ultimate success in the underlying suit, in the majority's eyes, renders *Perry–Ruzzi* inapplicable.

However, the fortuity of the ultimate result in the underlying tort action should not control the question of the applicability of the *Perry–Ruzzi* rule in determining the rights and responsibilities of the parties under the indemnification provisions. Instead, under the language of those provisions at issue here, the applicability of *Perry–Ruzzi* should depend upon the **allegations** in the underlying lawsuit, for that is the time when the obligation to defend arises. *Cf. General Accident Ins. Co. of America v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1094 (1997) ("The obligation to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action . . . .") (*quoting Wilson v. Maryland*

*Cas. Co.*, 377 Pa. 588, 105 A.2d 304, 307 (1954)).[1]

Here, the majority essentially finds that the *Perry–Ruzzi* rule of construction is only applicable to cases where the would-be indemnitee has actually been adjudicated negligent. But nothing in *Perry–Ruzzi* requires such a limitation. To the contrary, as this case well illustrates, the concerns that animated the *Perry–Ruzzi* rule—*i.e.*, that provisions that purport to afford a party protection from claims premised upon its own negligence are so "unusual and extraordinary" that they should be found to exist only when the contract expressly requires it—exist the moment the would-be indemnitee is "merely alleged" to have been negligent, for that is when the indemnitor's obligation is triggered.

On their face, the indemnification provisions at issue here, which were contained in "standard form documents regularly used by Atlantic in their business relationships" (trial court slip op., 5), purport to impose a duty upon Barqawi not only to "indemnify and hold harmless" Atlantic if it is not solely negligent, but also to **defend** Atlantic. That duty of defense, when it exists, obviously is triggered before any determination is made as to ultimate fault in the underlying action. For it is upon the mere allegation that legal consequences—to wit, the costs of defense that are at issue here—begin to arise. It is that duty of defense for which Atlantic now seeks compensation. Indeed, but for the Plaintiff's allegation that Atlantic was negligent, Atlantic would have no claim at all against Barqawi. Atlantic cannot have it both ways. Barqawi's contractual obligation to defend Atlantic thus arose, if it arose at all, when Atlantic was jointly sued in negligence, along with Barqawi and Perry, in connection with the assault by Barqawi's employee, Perry.

As a result of the majority's decision, claims for defense costs will sometimes be treated differently than indemnification costs for purposes of the *Perry–Ruzzi* rule. While these liabilities are distinct, the *Perry–Ruzzi* rule should apply to

---

1. Although *General Accident* was speaking to the duty of an insurer, it is no less relevant here when the indemnification provisions effectively convert Barqawi into Atlantic's insurer in some instances.

claims for both types of costs. In this case, the two provisions at issue are entitled "Indemnity and Insurance" and under that heading, the parties intentionally encompassed both indemnification and defense costs. Additionally, defense costs in many instances can be just as burdensome as indemnification costs; this court should be wary of presuming that the indemnitor intended to assume the responsibility for the costs of defending against claims alleging the indemnitee's own negligence without an express agreement. *See Perry*, 66 A. at 557 ("The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation.").

Contrary to the majority, I would affirm the Superior Court's order because the provisions here are not sufficiently specific under the *Perry–Ruzzi* rule to award Atlantic coverage for its defense costs. In *Topp Copy Products, Inc. v. Singletary*, 533 Pa. 468, 626 A.2d 98 (1993), we explained that "[i]n contracts of indemnity, this principle [that exculpatory language must be expressed in clear and unequivocal terms] is applied with a force that requires the parties to state in express terms that the active negligence of the indemnitee will be assumed by the indemnitor." *Id.* at 101. This court in *Ruzzi* emphasized that "[n]o inference from words of general import can establish such indemnification." *Ruzzi*, 588 A.2d at 4.

In the instant case, the parties failed to state in express terms that liability for Atlantic's own negligent acts will be assumed by Barqawi. To the contrary, the indemnity provisions use words of general import in setting forth the claims for which Barqawi will assume liability. *See, e.g.*, Franchise Agreement, Section 12 ("[Barqawi] agrees to indemnify, hold harmless and defend ATLANTIC from and against all claims, losses and damages for personal injury or death. . . ."). The provisions only specifically refer to Atlantic's negligence when addressing the liability that **will not** be assumed by Barqawi. *See id.* (". . . . excepting any damage or loss caused solely by

the negligence of [Atlantic] or solely by [Atlantic's] failure to perform its obligations hereunder.").

The *Perry–Ruzzi* rule does not permit the subtleties of discerning, by resort to inferences, what the parties intended. The rule requires clarity.[2] At best, the indemnity provisions are ambiguous as to the liability that Barqawi has agreed to assume, and under *Perry–Ruzzi*, this ambiguity cannot be construed in Atlantic's favor to afford indemnity for its own negligent acts.

Accordingly, I would hold that the *Perry–Ruzzi* rule is a rule of contract construction which applies to an agreement at the time that the potential indemnitee is sued to determine both indemnification and defense obligations. In this case, the indemnity provisions do not sufficiently express the parties' intent that Barqawi would indemnify and defend Atlantic against claims alleging Atlantic's own negligent acts. Because the Superior Court properly determined that Atlantic is not entitled to recover its defense costs, its order should be affirmed.

Justice CASTILLE joins this dissenting opinion.

SAYLOR, Justice, dissenting.

I agree with the majority's continued endorsement of the *Perry/Ruzzi* rule of contract construction as it pertains to circumstances involving substantive indemnification for a claim predicated upon the sole negligence of the indemnitee. However, I also share Mr. Justice Cappy's view that, in assessing Barqawi's duty to defend, little significance should attach to

**2.** Compare the provision in *Willey v. Minnesota Min. & Mfg. Co.,* 755 F.2d 315 (3d Cir.1985) ("[C]ontractor agrees to indemnify, defend an l hold harmless Owner from and against any and all common law, statutory and other liability, loss, cost and expense, including court costs and legal fees, incurred by them because of any and all . . . injuries . . . referred to in this Article, **whether or not based in whole or in part upon the active, passive, concurrent (but not sole) negligence of Owner** . . . .") Alternatively, Atlantic could have included a separate paragraph in the agreements clearly defining Barqawi's defense obligations.

the fact that Atlantic ultimately obtained a favorable judgment on the claims of direct negligence lodged against it.

In my view, it is most straightforward to recognize that the *Perry–Ruzzi* rule simply does not come into play in assessing an indemnitor's duty to defend in situations in which the plaintiff's "sole negligence" theory is merely one of multiple claims asserted against the prospective indemnitee.[1] Generally, the duty to defend is triggered if the underlying complaint avers facts that would support indemnification under the agreement, and the indemnitor must defend until such time as the claim is confined to recovery that the contract does not cover (for example, a theory predicated upon the exclusive negligence of the indemnitee). *See generally General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 705, 692 A.2d 1089, 1095 (1997). The indemnitor therefore may not escape the obligation to defend merely because the initial pleadings are broad and all-inclusive. Barqawi, however, sought for this rule to be applied in reverse, asking the Court to hold that so long as one theory of relief asserted against the indemnitee would not in and of itself require a defense, no duty would arise to defend against any of the several theories asserted. This position is inconsistent with the traditional precepts and should be rejected for that reason.

In this regard, the central reasoning supplied by the trial court (the Honorable Anne E. Lazaras) is consistent with the above and merits recognition:

> An insurer's obligation to defend is fixed solely by the allegations of the underlying complaint. The duty to defend is limited to those claims covered by the policy. The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy.

1. As the majority notes, several of the claims asserted against Atlantic were predicated upon a theory of vicarious liability for Barqawi's conduct and omissions, representing a paradigm circumstance in which a contractual duty to defend ordinarily would be contemplated in a franchise agreement.

If coverage depends upon the existence or non-existence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against the insured. In plaintiff's Amended Complaint, plaintiff alleged that defendant, Bobby Perry, assaulted, battered and beat plaintiff. Plaintiff also alleged that as a result of both Barqawi's and Atlantic's negligence, gross negligence, recklessness and carelessness in hiring, supervising and controlling defendant, Perry, plaintiff suffered his injuries. Lastly, plaintiff alleged that both Barqawi and Atlantic failed to provide a safe facility.

After an initial review, it appears that the complaint is worded broadly enough to create a potentially covered claim.

(citations omitted).

Although the trial court's central legal analysis clearly favored Atlantic's position, it denied Altantic's claim for legal fees apparently for equitable reasons. In particular, the court indicated that, since Barqawi was not an insurance company but a small business proprietor "who was compelled to sign the agreement and lease if he wished to enter into a business relationship with Atlantic, ... [the] court will not treat Barqawi as an insurer and concludes that it had either no duty to defend Atlantic as of the filing or that its duty ceased as of the grant of Summary Judgment." In a footnote, the trial court further indicated, "the Court reviewed the bills provided by Atlantic to defend its claim and found them to be at first blush, exorbitant in light of the fees of Barqawi, the primary defendant in the case." Since the Superior Court affirmed on different grounds,[2] the actual reasons provided by the trial court in support of its disposition have not been expressly

---

**2.** It may be that the Superior Court's decision to rely upon different grounds reflected some level of discomfort with the trial court's reasoning. Indeed, the trial court's own opinion in support of its order reflects some degree of uncertainty as to the propriety of the order denying counsel fees, as it indicates that Barqawi "either had no duty to defend Atlantic as of the filing or that its duty ceased as of the grant of Summary Judgment."

considered. Because Barqawi has remained the appellee throughout the proceedings, he was charged with no obligation concerning issue preservation and presentation.

As a verdict, order, or judgment should be affirmed for any valid reason appearing from the record, I believe that the appropriate disposition for the case would be a remand to the Superior Court for further proceedings consistent with this Court's decision and primarily to assess the reasons supplied by the trial court in support of its order.