**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-4666
_____

WESTON AND COMPANY, INC.
trading as
BRYCE'S CATERING,
A New Jersey Corporation,
                                        Appellant

v.

BALA GOLF CLUB

_____

No. 08-3239
_____

WESTON & CO INC, A New Jersey Corporation,
T/A Bryce's Catering

v.

BALA GOLF CLUB,
                              Appellant

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(Civil No. 06-cv-4900)
District Judge:  Honorable Eduardo C. Robreno

Submitted Under Third Circuit LAR 34.1(a)
June 4, 2010

_____

Before: AMBRO, CHAGARES, and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>.

(Filed: August 20, 2010 )

_____

OPINION

_____

CHAGARES, <u>Circuit Judge</u>.

Plaintiff Weston and Company, Inc, trading as Bryce's Catering ("Weston"), and defendant Bala Golf Club ("Bala") cross-appeal from the judgment of the District Court entered on November 16, 2007 and amended on July 1, 2008. For the reasons that follow, we will affirm in part, vacate in part, and remand for further proceedings.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. Weston is a catering company operated by Alan Brody. Bala is a private golf club. On October 24, 2002, Weston and Bala entered into a lease agreement, under which Weston leased certain facilities at Bala for the purpose of providing food and beverage services to Bala's members. After the parties signed this lease, Weston made over $50,000 in improvements to modernize Bala's kitchen. Pursuant to section 4(a) of the lease, Weston's investment in these permanent improvements permitted it to defer the first $50,000 in rent payments, to be paid in twenty monthly installments over the subsequent two years. Appendix ("App.") 36-37.

2

On June 19, 2006, Bala terminated the lease, effective September 30, 2006.  Section 3(c) permitted Bala to terminate the lease, with three months' notice, at any time.  App. 35.  This section of the lease required Bala to pay Weston a termination fee, which is discussed in greater detail below.  For its part, section 4(a) provided that "[u]pon a termination, any unpaid deferred rent shall be credited against any sums due Tenant by Landlord."  App. 37.  The District Court found that Weston had paid only $17,500 of the deferred rent, and that $32,500 in deferred rent remained unpaid.  App. 25.

Section 3(c) included two categories of termination fees.  The first, which is not at issue in this appeal, required Weston to pay a portion of the gross receipts from certain events scheduled to occur after Bala provided notice of termination.  The second, set forth in section 3(c)(ii), required Weston to pay the "unamortized cost of any permanent improvements ("Improvements") made by Tenant [Weston] during the term of the . . . Lease."  App. 36.  This provision specified that the termination fee "shall be calculated as follows":

> Tenant will be reimbursed for the portion of the Improvements represented by the months of useful life not used by Tenant.  Such amount shall be determined by multiplying the cost of an Improvement, divided by the useful life in months of such Improvement as determined by GAAP, amortized on a straight line basis, by the number of months which the Tenant will be unable to use such Improvement . . . .

Id.  This provision also provided an example of how this calculation would work: assuming an improvement with a cost of $12,000, a useful life of 120 months, and 100 months remaining in useful life, the amount to be reimbursed would be $10,000.  Id.  The

3

court's specific calculations in reaching the judgment sum are set forth below.

After Bala terminated the lease, Weston filed this action in the District Court on November 6, 2006, alleging claims for breach of contract and fraud. On February 20, 2007, Bala filed an answer to Weston's complaint, including several affirmative defenses and a counterclaim. On December 16, 2007, the District Court held a one-day bench trial. On November 30, 2007, the court issued its findings of facts and conclusions of law, ordering judgment for Bala in the amount of $2,697.40.

The District Court found that Weston was entitled to a total of $61,790.81: $35,044.13 in September dining room sales; $17,329.93 in unused food minimums; $9,416.75 in party contracts; and $0.00 in permanent improvements. App. 32. The court concluded that Weston would be entitled to a termination fee under section 3(c)(ii) of the lease for the permanent improvements made to the kitchen, but that Weston had failed to establish the scope of its damages "within a 'fair degree of probability.'" App. 24. Specifically, the District Court concluded that Weston had failed to present admissible expert testimony calculating the useful life of the improvements under Generally Accepted Accounting Principles ("GAAP"). App. 12-14. The court therefore awarded no damages for permanent improvements made by Weston.

The District Court found that Bala was entitled to a total of $64,488.21: $0.00 for the funk water purifier; $25,000 for the liquor license; $32,500 in deferred rent; $2,067.76 for repairs to the HVAC system; $540.46 for repairs to kitchen equipment; and $4,379.99

4

for missing kitchen equipment. App. 32. Offsetting the $61,790.81 owed to Weston, the court ordered judgment for Bala in the amount of $2,697.40. App. 32-33.

On November 30, 2007, Bala filed a motion for partial new trial, claiming that the District Court had failed to make any findings related to three components of Bala's counterclaim, in which Bala requested late charges, interest, and expenses of enforcement under section 25 of the lease. On July 1, 2008, the District Court granted Bala's motion, but entered an amended judgment that denied Bala's three requests. These cross-appeals followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. When reviewing a judgment entered after a bench trial, we exercise "plenary review over [the] [D]istrict [C]ourt's conclusions of law" and its "choice and interpretation of legal precepts." Am. Soc'y for Testing & Materials v. Corrpro Cos., 478 F.3d 557, 566 (3d Cir. 2007) (quotation marks omitted). We review the District Court's findings of fact for clear error. Id.

## III

Both parties challenge the amount of the District Court's judgment. Weston claims that it was entitled to: (1) a termination fee in the amount of $50,613.49 for the pro-rated value of the kitchen improvements; and (2) stipulated damages of $12,333.00 for golf outings and $666.22 for dinnerware. Weston also disputes the District Court's award of

5

deferred rent, contending that Bala's termination of the lease eliminated Weston's obligation to pay any additional deferred rent. Bala claims that it was entitled to late charges, interest, and expenses of enforcement under section 25 of the lease.

Resolving the parties' claims requires us to apply Pennsylvania contract law.[1] In construing a contract, we must "ascertain and give effect to the intent of the contracting parties." Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). "It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." Id. (citation and quotation marks omitted). Furthermore, the party alleging breach of contract "has the burden of proving damages resulting from the breach." Spang & Co. v. U.S. Steel Corp., 545 A.2d 861, 866 (Pa. 1988). "[D]amages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." Id.

A.

Weston first argues that the District Court erred by failing to award a termination fee under section 3(c)(ii) for the permanent improvements made to the kitchen. Section

---

[1] As the District Court concluded, the parties agreed to have Pennsylvania law govern disputes under the lease. See App. 14, n.11 (explaining that "[c]hoice-of-law provisions 'will generally be given effect'" (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 178 (3d Cir. 1992))).

6

3(c)(ii) includes a specific definition of how this termination shall be calculated: "Such amount shall be determined by multiplying the cost of an Improvement, divided by the useful life in months of such Improvement as determined by GAAP, amortized on a straight line basis, by the number of months which the Tenant will be unable to use such Improvement . . . ." App. 36. At trial, Weston relied on testimony from Alan Brody to establish the proper calculation of this termination fee. Brody testified that the parties had agreed to apply a useful life of ten years for all kitchen equipment. App. 75. Brody also testified, based on his twenty-three years of food service and catering experience, that kitchen equipment generally lasts "[a] lot more than ten years" and sometimes "in excess of twenty years." App. 76.

The District Court refused to accept Brody's testimony regarding the alleged agreement to use ten years as the useful life for the kitchen equipment, concluding that the parties' intent could be determined from the lease itself, which provides that useful life shall be "determined by GAAP." Given this unambiguous statement in the lease, the District Court refused to consider extrinsic evidence to the contrary. The District Court also concluded that Brody's testimony was inadmissible to establish the useful life of the kitchen equipment, concluding that his "opinion of useful life under GAAP is neither admissible lay opinion under Rule 701 nor the opinion of a qualified expert under Rule 702." App. 14. Furthermore, "[e]ven if lay opinion testimony were accepted to determine useful life," the District Court found that Weston failed to present "credible testimony"

7

sufficient to apply the calculation specified in the lease.  App. 23-24.  The court noted that Brody's own testimony admitted that different types of kitchen equipment typically lasted for different periods of time.  App. 24.  The court concluded that because "there is insufficient evidence from which to determine the useful life of any of the claimed improvements, . . . Weston has failed to meet its burden of establishing damages within a 'fair degree of probability.'"  Id.

We agree with the District Court's finding that Weston failed to meet its burden to establish, "with reasonable certainty," the amount of its damages.  Spang, 545 A.2d at 866.  Even assuming, arguendo, that Brody was qualified to offer testimony on the useful life of kitchen equipment based on his experience in the food and catering business, Weston still failed to establish its claim for damages with any reasonable degree of specificity.  As the District Court noted, the lease did not define "useful life" to be ten years; it defined the term by reference to GAAP.  Brody's testimony, at most, established that different types of kitchen equipment last from as little as five years to beyond twenty years.  Weston did not produce any credible evidence describing how the term "useful life" should be applied in this context.  Nor did Weston supply the relevant subsidiary details necessary to apply the depreciation formula specified in the lease.  We agree with the District Court that Weston failed to produce sufficient credible evidence to conduct the calculation set forth in section 3(c)(ii).  We will therefore affirm the judgment as to the award of $0.00 in damages for permanent improvements.

8

B.

Weston further argues that the District Court erred by failing to consider the parties' stipulations regarding $12,333.00 in damages for golf outings and $666.22 in damages for dinnerware. At the beginning of the trial, counsel for Weston noted that the parties had stipulated "with regard to the golf outings that plaintiff is entitled to [$12,333.00]." App. 63. He also noted the parties' stipulation that "plaintiff is entitled to [$666.22] for dinnerware purchased for defendant." App. 62. The District Court did not include these two categories of damages in its judgment, see App. 32 (listing amounts owed to each party), and Bala does not contest that these amounts are owed to Weston, see Bala Br. at 21 ("Bala does not dispute that the parties stipulated to certain amounts for dinnerware and golf outings."), 30 ("Bala concedes to the stipulations referenced in Weston's Brief. App. 62, 63 (Tr.)."). Accordingly, we will vacate the judgment insofar as it failed to include these categories of damages. We will remand the matter to the District Court to recalculate damages in light of these stipulations.

C.

Weston also argues that the District Court erred by ordering it to pay $32,500 in deferred rent. Weston does not dispute that $32,500 in deferred rent remained unpaid when Bala terminated the lease. Weston asserts, however, that the lease "provided . . . that no further rent would be due if Lessor voluntarily terminated the Lease through no default of Lessee." Weston Br. at 29. This assertion is not supported by the actual terms of the

9

lease. Section 3(c) permitted Bala to terminate the lease, with three months' notice, at any time. App. 35. Section 4(a), which allowed for the deferral of rent provided Weston made at least $50,000 in improvements, did not contain any provision cancelling the deferred rent payments upon termination of the lease. App. 36-37. On the contrary, section 4(a) provided that "[u]pon a termination, any unpaid deferred rent shall be credited against any sums due Tenant by Landlord." App. 37. As discussed above, section 4(c) required Bala to pay Weston a termination fee, but this provision did not alter any of the deferred rent provisions set forth in section 4(a). We find no error in the District Court's factual finding that Weston had paid only $17,500 of the deferred rent, and that $32,500 in deferred rent remained unpaid. App. 25. Accordingly, we will affirm the judgment as to the $32,500 in deferred rent awarded to Bala.[2]

## D.

Bala claims that the District Court erred by denying its counterclaim for late charges, interest, and expenses of enforcement, which it contends are available under section 25 of the lease. Section 25, which is captioned "DEFAULT. RIGHTS AND REMEDIES.," sets forth various provisions related to a potential default by Weston. App. 51-55. Section 25(a) defines the situations under which Weston would be considered in

---

[2] Weston also suggests that the District Court erred by admitting the testimony of William Horn regarding the operation of Bala's computer system, see Weston Br. at 33-34, and questions the District Court's calculation of unused club minimums, see id. at 34-38. We have reviewed Weston's contentions, and we find no reason to disturb the judgment of the District Court in these respects.

default. App. 51-52. Section 25(b) enumerates several of Bala's remedies for default, "in addition to all remedies Landlord may have at law or in equity." App. 52. Section 25(c) requires Bala to provide notice of default, and an opportunity to cure, before exercising any of the remedies set forth in the lease. App. 54. The District Court determined that the remaining subsections of section 25 – including 25(d), which authorizes attorneys' fees; 25(f), which provides for 10% annual interest; and 25(g), which provides for a 5% late charge – are only triggered upon Weston's default. "Because Bala terminated the contract pursuant to Section 3, not Section 25," the court explained, "Bala is not entitled to the remedies listed in Section 25, which are limited to situations of default in which Bala provided Weston with notice and an opportunity to cure." Supplemental Appendix ("S.A.") 2 n.1. Bala contends that these remedial provisions operate separately from the rest of section 25, and that a default by Weston is not required to trigger their application.

Individual contractual provisions must be interpreted in light of their broader context. See Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 432-33 (Pa. 2001) (rejecting contractual interpretation based on an out-of-context provision that conflicted with the intent of the contracting parties as manifested by the rest of their contract). We agree with the District Court that sections 25(d), 25(f), and 25(g), when read in their proper context, apply only to situations of "default" as defined by section 25(a). Since Bala terminated the lease pursuant to section 3, does not contend that Weston defaulted pursuant to section 25(a), and did not comply with the notice-and-cure

11

provisions of section 25(c), the District Court did not err in denying Bala's counterclaim for late charges, interest, and expenses of enforcement

IV.

For the foregoing reasons, we will vacate the judgment of the District Court insofar as it did not incorporate Weston's claims based on stipulations regarding $12,333.00 in damages for golf outings and $666.22 in damages for dinnerware, remand the matter to the District Court to recalculate damages in light of these stipulations, and affirm the judgment in all other respects.