12-3466-bk
Gator Monument Partners, LLLP v. Great Atl. & Pac. Tea Co.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand thirteen.

PRESENT: CHESTER J. STRAUB,
REENA RAGGI,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

--------------------------------------------------------------------

IN RE: THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., ET AL.,

*Debtors*.

--------------------------------------------------------------------

GATOR MONUMENT PARTNERS, LLLP, GATOR GARWOOD PARTNERS, LTD., GATOR SOUTH AVENUE PARTNERS, LTD.,

*Appellants*,

v.                                            No. 12-3466-bk

THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., ET AL.,

*Appellees*.

--------------------------------------------------------------------

APPEARING FOR APPELLANTS:     DAVID M. KOHANE, Cole, Schotz, Meisel, Forman & Leonard, P.A., Hackensack, New Jersey (Neal W. Cohen, Halperin Battaglia Raicht, LLP, New York, New York; Matthew C. Blickensderfer, Frost Brown Todd LLC, Cincinnati, Ohio, *on the brief*).

APPEARING FOR APPELLEES: ANDREW M. GENSER (Paul M. Basta, *on the brief*), Kirkland & Ellis LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Vincent L. Bricetti, *Judge*; Robert D. Drain, *Bankruptcy Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on July 30, 2012, is AFFIRMED.

Gator Monument Partners, LLLP, Gator Garwood Partners, Ltd., and Gator South Avenue Partners, Ltd. (collectively, "Gator"), appeal from the affirmance of a bankruptcy court order allowing lessee Great Atlantic & Pacific Tea Company, operating under the trade name Pathmark ("Pathmark"), to assume an unexpired supermarket lease during a Chapter 11 reorganization. See 11 U.S.C. § 365(a). Gator had contested that assumption based on Pathmark's purported prepetition breach of the lease by failing to obtain Gator's consent to the sublease of a storefront on the leased premises to Dunkin' Donuts. See id. § 365(c)(5) (prohibiting assumption of unexpired lease "of nonresidential real property [that] has been terminated under applicable nonbankruptcy law" before commencement of bankruptcy case). Gator now submits that the bankruptcy and district courts erred in construing the lease at issue not to require its consent to such a sublease. The construction of the lease presents us with a question of law that we review de novo, paying particular attention to the bankruptcy court decision. See ReGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.), 547 F.3d 484, 492 (2d Cir. 2008). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm the challenged order and judgment allowing assumption of the lease.

1.    Assumption

Pennsylvania law, which governs the parties' dispute, holds that leases are "to be interpreted according to contract principles," and that when a lease's language is "clear and unambiguous," its plain meaning controls. Mace v. Atl. Ref. Mktg. Corp., 567 Pa. 71, 80 (2001). The language here at issue appears in lease paragraph 16(b), which states that the "[l]essee may sublet all or any part of the Premises" during the lease's initial term (called the "Primary Term") without first obtaining the lessor's consent. Lease Agmt. ¶ 16(b), J.A. 161 (emphasis added). The very next sentence qualifies the lessee's sublet authority as follows: "Lessee shall not sublet the Premises for any portion of an Extended Term [i.e., a renewal term] without the prior written consent of Lessor, which consent shall not be unreasonably withheld." Id. The bankruptcy and district courts concluded that the consent requirement for subletting "the Premises" during a renewal term applied to subletting "all," not "any part," of the Premises, because the first paragraph of the lease defines the term Premises to apply to the whole of what was being transferred under the lease. See id. at 1, J.A. 130 (describing "Premises" as "consisting of (i) the land (the Land) described in Schedule A, (ii) all buildings and other improvements (including, but without limitation, the attachments and other affixed property), now or hereafter located on the Land, and the air space above the surface of the Land . . . , and (iii) the respective easements, rights and appurtenances relating to the Land and the Improvements").

In urging otherwise, Gator cites to a dictionary definition of "premises," which recognizes the phrase as "elastic and inclusive," Black's Law Dictionary (6th ed. 1990), as well as to cases holding that the meaning of "premises" in a lease "must vary as the context

in which the term appears may vary," Bradlees Tidewater, Inc. v. Walnut Hill Inv., Inc., 239 Va. 468, 475 (1990) (holding that lessee satisfied covenant to use "Demised Premises" for business activity by so using portion of premises, notwithstanding lease's express definition of "Demised Premises" to mean entire property). These principles would not, however, control if in fact the first paragraph of the lease is correctly construed to reflect the parties' intent to afford "Premises" a particular definition. See Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 608 (1999) (resorting to plain-meaning analysis, including dictionary definitions, only because contract "d[id] not define the terms in question"); City of Philadelphia v. Phila. Transp. Co., 345 Pa. 244, 251 (1942) (stating that, in construing Pennsylvania contracts, "specific provisions ordinarily will be regarded as qualifying the meaning of broad general words in relation to a particular subject"). While Gator submits that the lease's drafters knew how to use the term "entire premises" in relation to a sublease when that is what they meant, as is evident from paragraph 16(b)'s allowance for a novation where "aggregate rents payable under a sublease of the entire Premises during an Extended Term" exceed rent owed by the lessee, Lease Agmt. ¶ 16(b), J.A. 162, this hardly settles the question given that the drafters specifically chose not to repeat the expansive language they used to identify the lessee's subletting authority during the initial term—"all or any part of the Premises"—in then qualifying that authority for a renewal term—"the Premises," id., J.A. 161.

In sum, even if Gator's arguments have some force, they at best illustrate ambiguity as to the scope of paragraph 16(b)'s consent requirement. As the bankruptcy and district courts correctly recognized, Pennsylvania law requires that this ambiguity be resolved in

Pathmark's favor. See Williams v. Notopolos, 259 Pa. 469, 476 (1918) (referencing "settled rule that any uncertainty as to the meaning of a clause in a lease is to be determined in favor of the lessee"); see also, e.g., Kline v. Marianne Germantown Corp., 438 Pa. 41, 45 (1970); Northway Village No. 3, Inc. v. Northway Props., Inc., 430 Pa. 499, 504 (1968). That conclusion is further supported by the principle that restraints on the transfer of real property "will be kept as minimized as the language of the restraint allows." BC&H Corp. v. Acme Mkts., Inc., 19 Pa. D.&C.3d 419, 429 (Ct. Com. Pl. 1980) (construing covenant not to assign "lease" without consent as "prohibition upon an assignment of the lease as a whole" (citing Restatement (Second) of Property: Landlord & Tenant § 15.2 cmt. e (1977)); see also 8 Summ. Pa. Jur. 2d Property § 27:24 (2d ed.) (calling lessee's right to sublease "full and unrestricted . . . , except to the extent clearly and properly prohibited by the lease contract").

Gator contends that applying these principles to the lease at issue would allow the lessee to circumvent the consent requirement by omitting, for example, "a tiny corner of the parking lot from a sublease of everything else." Appellants' Reply Br. 7. This contention elides the fact that the lessor could have protected itself by predicating sublease of "all or substantially all" of the Premises on the lessor's consent. Such language is common to many commercial contracts, see, e.g., Sharon Steel Corp. v. Chase Manhattan Bank, N.A., 691 F.2d 1039, 1045 (2d Cir. 1982), and, indeed, appears in the last sentence of paragraph 16(a) of the lease, see Lease Agmt. ¶ 16(a), J.A. 161 ("Lessee shall, within 20 days after the execution of any sublease of all or substantially all of the Premises, deliver a conformed copy thereof to Lessor."). In any event, Gator does not—and cannot—suggest that the subleased storefront constitutes substantially all of the Premises, rendering its argument academic.

Nor can Gator avoid application of these tenets of Pennsylvania law by citing to paragraph 16(a) of the lease, which states that a "sublease or assignment not expressly permitted by this paragraph 16 shall be null and void," Lease Agmt., J.A. 161, given that the same paragraph also states that the lessee "may sublet the Premises" if it complies with the remainder of paragraph 16, id., J.A. 160.

Finally, we impute no determinative significance to Pathmark's taking the position, in unrelated litigation between the parties, that any renewal-term sublease requires Gator's consent. While the prior court stated that "[d]uring the Extended Term . . . the landlord's consent to a sublease is required," Pathmark Stores, Inc. v. Gator Monument Partners, LLP, No. 08-3082, 2009 WL 5184483, at *2 (E.D. Pa. Dec. 21, 2009), because the parties there had assumed the existence of a consent requirement, the issue was not "actually litigated and decided in the prior proceeding" as would be required for collateral estoppel to bar its relitigation here, Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). Nor was the district court's statement about consent "essential to that judgment." Id. at 368. Rather, as the bankruptcy court observed, it was dictum. Further, this is not a case where "the risk of inconsistent results with its impact on judicial integrity is certain," warranting judicial estoppel. DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (internal quotation marks omitted). In sum, while Pathmark's reversal of course on consent might perplex, it was not barred by prior litigation from urging a narrower construction of the sublease consent requirement in the bankruptcy court.

Because Gator's attempt at prepetition termination failed as a matter of law, the district court appropriately upheld the challenged bankruptcy court order allowing lease assumption.

2.    Cure

Gator contends that the bankruptcy court erred in failing to conduct a hearing before identifying no cure costs relating to the lease assumption at issue. See Order Authorizing the Debtors to Assume Certain Unexpired Leases and Related Subleases of Nonresidential Real Property 4, No. 10-24549 (RDD) (S.D.N.Y. Bankr. Dec. 23, 2011), ECF No. 3090. We are not persuaded. See generally 11 U.S.C. § 102(1)(A) (defining "notice and a hearing" or similar phrase in Bankruptcy Code to mean, inter alia, "such opportunity for a hearing as is appropriate in the particular circumstances"); C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1313 (2d Cir. 1997) (identifying no abuse of discretion in bankruptcy court's declining to hold hearing where "record provided ample evidence on which the court could make [its] decision"). Gator does not dispute that, in reaching the challenged decision, the bankruptcy court had the benefit of briefing by the parties, if not oral argument. Nor does Gator dispute that it did not request a further hearing in the bankruptcy court on the matter.

Even if the bankruptcy court could have provided a fuller explanation in denying costs associated with the lease assumption, Gator does not argue that the court's substantive conclusion is erroneous. We note also that Gator's underlying arguments pertaining to costs were conclusively rejected on the merits in pre-bankruptcy proceedings between the parties. See Pathmark Stores, Inc. v. Gator Monument Partners, LLP, 2009 WL 5184483, at *5–10. Whether or not this estopped Gator's claim, it renders any complaint about an inadequate hearing meritless.

The judgment of the district court is AFFIRMED.  Appellees' motion to strike is

DENIED as moot.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court