J-A17033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MANDS CONSTRUCTION COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DOMUS INC. AND PHILADELPHIA REDEVELOPMENT AUTHORITY | |
| Appellees | No. 94 EDA 2015 |

Appeal from the Judgment Entered February 6, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2012 No. 001129

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED JULY 29, 2015**

Appellant, Mands Construction Company ("Mands"), appeals from the judgment entered in the Philadelphia County Court of Common Pleas, in favor of Appellee, Domus Inc. ("Domus").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The Board of Directors of Mount Vernon Manor, an apartment complex, hired Domus as the contractor to renovate seventy-five (75) units within thirteen (13) buildings.  The contract was federally funded.  Projects receiving federal funds are subject to the Davis-Bacon Act ("DBA").  The DBA requires employers to file certified payrolls, ensures wage standards are met, and

---

[1] The Philadelphia Redevelopment Authority ("PRA") is not a party to this appeal.

limits the amount of hours employees can be required to work. Penalties for violating the DBA include "debarment," which would prevent Domus from conducting future work on federally funded projects.

Domus hired Mands as the subcontractor to complete demolition work on the property. Mands bid $300,000.00 for this work, and the parties signed the contract on March 8, 2012. After Domus amended the contract and removed a portion of the work, the total bid was $276,261.00.

The text of the contract between Domus and Mands incorporated the DBA requirements. The contract also required the use of union labor. Mands did not belong to a union, and hired a negotiator to arrange for Mands to become a union company solely for this project. The negotiation failed, so Domus and Mands amended the contract to arrange for Domus to pay union benefits starting in week two while Mands continued to negotiate with the union.

Mands began the job on September 6, 2012. On September 7, 2012, a representative from the PRA visited the job site. The representative interviewed each of the workers and reviewed the wages they should receive. The representative also spoke with Gerald Washington, the manager of this project and vice-president of operations for Mands, regarding the prevailing rate of pay. Several employees of Mands subsequently called the PRA and complained they were receiving $100.00 per day instead of the prevailing wage, which was $47.85 per hour. Mands

terminated the complaining employees following these calls, allegedly for other reasons.

After Domus learned of the PRA's involvement, Domus contacted Mands and asked for the certified payrolls. Domus sent Mands a letter on September 13, 2012, warning Mands that Domus would terminate their contract if Mands failed to follow the DBA standards. Mands did not turn over any certified payrolls. Based on copies of the fronts of checks and sign-in sheets Mands submitted, Thomas Pyle, the project manager for Domus, estimated Mands' labor costs for the project. Mr. Pyle calculated Mands should have paid its employees $26,987.00 in wages for the 8% of the project Mands had completed to date. The checks Mands submitted reflected payment totaling only $8,965.60. On September 19, 2012, Domus sent Mr. Washington a letter terminating Mands for cause, due to its failure to comply with the DBA.

On October 9, 2012, Mands filed a complaint against Domus for wrongful termination and a request for a preliminary injunction halting all work on the project until Mands' reinstatement as subcontractor, and for lost profits. Domus filed an answer and a brief in opposition of the preliminary injunction on October 23, 2012. On November 1, 2012, the court denied Mands' request for a preliminary injunction. Mands amended its complaint on November 21, 2012, adding the PRA as a defendant, based on its alleged lack of meaningful review when investigating the employee complaints.

Mands amended the complaint a second time on December 27, 2012, and a third time on February 4, 2013. On February 26, 2013, Mands and the PRA stipulated Mands sought only a declaratory judgment that it did not violate the DBA but sought no monetary damages from the PRA. On March 15, 2013, Domus filed a petition to compel arbitration. Mands filed an answer on April 3, 2013. On April 23, 2013, the court denied the petition to compel arbitration. The court dismissed the PRA from the case on June 25, 2014. Dismissal of the PRA is not before us on appeal.

On August 25, 2014, the court held a non-jury trial. At trial, Mr. Washington testified for Mands and claimed he had paid workers the prevailing wage through Paychex, a payroll agency. He submitted copies of the front of several checks as evidence. Mr. Washington testified to an estimated profit between $140,000.00 and $150,000.00 on the project based on Mands' original bid of $300,000.00.

Mr. Pyle testified for Domus, stating Mands could not possibly have made this profit, based on labor calculations done at the prevailing rate of pay. Mr. Pyle's calculations showed a labor cost alone of $230,000.00. He also testified to dumpster costs of about $38,000.00, which Domus would have deducted from the total contract. Mr. Pyle stated the remaining $8,000.00 would likely have gone to expenses like gas and tools, leaving Mands with no profit margin.

Following the trial, the court ordered the parties to submit proposed

findings of fact and conclusions of law. The court found in favor of Domus on October 27, 2014; the court issued Rule 236 notice on October 28, 2014. On November 7, 2014, Mands timely filed a post-trial motion for a new trial. Domus filed an answer on November 14, 2014, and on the same day, the court denied Mands' motion. On December 11, 2014, Mands filed a premature notice of appeal with this Court. On February 6, 2015, the court entered judgment in favor of Domus.[2] The court did not order, and Mands did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Mands raises two issues for our review:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT [MANDS] WAS JUSTIFIABLY TERMINATED ON SEPTEMBER 19, 2012 FOR VIOLATING THE DAVIS-BACON ACT?
>
> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT [MANDS] HAD NOT

---

[2] Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. *See generally **Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511, 516 (Pa.Super. 1995). Nevertheless, a final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. ***Drum v. Shaull Equipment and Supply, Co.***, 787 A.2d 1050 (Pa.Super. 2001), *appeal denied*, 569 Pa. 693, 803 A.2d 735 (2002). Here, the court denied Mands' post-trial motion on November 14, 2014. Mands filed a notice of appeal on December 11, 2014, prior to the entry of final judgment. The court entered final judgment on February 6, 2015. Thus, Mands' notice of appeal was actually premature when filed, but it related forward to February 6, 2015, the date the final judgment was entered. ***See*** Pa.R.A.P. 905(a) (stating notice of appeal shall be treated as filed on day of entry). Hence, there are no jurisdictional impediments to our review.

DEMONSTRATED AND WAS NOT ENTITLED TO DAMAGES?

(Mands' Brief at 4).

In its first issue, Mands argues that Domus terminated the contract without sufficient evidence to demonstrate Mands' violation of the DBA. Mands claims the PRA, the entity responsible for investigating complaints of improper wage payments, had made no conclusion regarding Mands' alleged violations of the DBA at the time of Mands' termination. Mands contends Domus knew the PRA was responsible for determining DBA violations and that the PRA had not done so here. Mands submits that agents of Domus admitted in their testimony they acted on allegations, without waiting for Mands to submit all its paperwork. Mands asserts the trial court erroneously relied on testimony referring to sign-in sheets and wage calculations when it decided Domus was justified in firing Mands, because Domus did not have this information at the time it terminated the contract.[3]

Additionally, Mands maintains that even if such information was available, Mands presented evidence of distributed checks showing it paid

---

[3] Mands complains about the trial court's alleged improper reliance on testimony referring to sign-in sheets and wage calculations for the first time on appeal. Consequently, this claim is waived. *See* Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal); *Commonwealth v. Charleston*, 16 A.3d 505 (Pa.Super. 2011), *appeal denied*, 612 Pa. 696, 30 A.3d 486 (2011) (explaining to preserve claim of error for appellate review, party must make specific objection to alleged error before trial court in timely fashion and at appropriate state of proceedings; failure to raise such objection results in waiver of underlying issue on appeal).

employees $47.85 per hour. Mands contends the employees complaining to the PRA did so only in retaliation after Mands fired them for theft. Mands also claims it presented testimony showing Domus orally modified the original contract to permit Mands to begin work on the project without using union labor. Mands asserts it fulfilled its duty to pay the prevailing wage rates under the DBA, and consequently, no breach of contract occurred. Mands concludes Domus was unjustified in terminating their contract.

In its second issue, Mands argues it demonstrated a lost profit of $140,000.00 to 150,000.00 on the project. Mands contends Domus made alterations subsequent to the signing of the contract to reduce Mands' profits. Mands concludes it is entitled to expectation damages in the amount of its anticipated profits.

In response to Mands' first issue, Domus argues that, pursuant to the contract, Mands had the responsibility to abide by the DBA. Domus contends the contract incorporated DBA provisions such as submitting certified payrolls, which Mands did not do. Domus asserts it repeatedly requested certified payrolls from Mands, which Mands failed to submit. Domus emphasizes it warned Mands in a September 13, 2012 letter that Mands would be fired if it continued to flout the contract requirements. Domus maintains it was forced to terminate Mands due to Mands' noncompliance, where Mands' actions put Domus at risk for debarment. Domus also insists Mands failed to comply with the contract requirement to

use union labor. Domus contests Mands' allegations that Domus knew Mands was using nonunion labor. Domus contends it took additional steps to ensure Mands' compliance with the contract, by modifying the contract to ensure payment of union benefits. Domus claims Mands presented no evidence of an oral modification to the contract. Domus submits Mands' breach of the contract requirement for union labor was another sufficient basis for Domus to terminate the contract. Domus concludes the trial court correctly determined Mands violated the terms of the contract, and Domus was justified in terminating Mands.

In response to Mands' second issue, Domus argues the details of the contract precluded any recovery for lost profits. Domus asserts Mr. Washington provided no evidence to corroborate his testimony concerning Mands' alleged expected profits for the project. On the other hand, Domus contends it supplied credible evidence to show the expenses involved in the job done properly would have foreclosed Mands from making a profit. Domus submits that if Mands paid the prevailing wage, which it was required to do, Mands would not profit from the project. Domus concludes the trial court correctly decided Mands was not entitled to lost profits. We agree with Domus' positions on both issues.

Our standard of review of a trial court's denial of a motion for a new trial is as follows:

> We will reverse a trial court's decision to deny a motion for
> a new trial only if the trial court abused its discretion. We

must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*Capoferri v. Children's Hosp. of Philadelphia*, 893 A.2d 133, 136 (Pa.Super. 2006) (*en banc*), *appeal denied*, 591 Pa. 659, 916 A.2d 630 (2006) (quoting *Stalsitz v. Allentown Hosp.*, 814 A.2d 766, 771 (Pa.Super. 2002), *appeal denied*, 578 Pa. 717, 854 A.2d 968 (2004)) (internal quotation marks omitted).

Contract interpretation is a question of law; therefore, this Court is not bound by the trial court's interpretation. *Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa.Super. 2007). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations." *Id.* (quoting *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa.Super. 2005)).

"To maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages."

*Lackner v. Glosser*, 892 A.2d 21, 30 (Pa.Super. 2006) (citing *Gorski v. Smith*, 812 A.2d 683, 692 (Pa.Super. 2002), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004)).  "For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain."  *Lackner, supra* (citing *Peck v. Delaware County Board of Prison Inspectors*, 572 Pa. 249, 260, 814 A.2d 185, 191 (2002)).  "An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity."  *Lackner, supra* at 30-31 (citing *Biddle v. Johnsonbaugh*, 664 A.2d 159, 163 (Pa.Super. 1995)).

"It is firmly settled that the intent of the parties to a written contract is contained in the writing itself.  When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone."  *Chen v. Chen*, 586 Pa. 297, 307, 893 A.2d 87, 93 (2006) (quoting *Mace v. Atlantic Refining Mktg. Corp.*, 567 Pa. 71, 80, 785 A.2d 491, 496 (2001)).  Pennsylvania law states:

> When interpreting the language of a contract, the intention of the parties is a paramount consideration.  In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.  When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

*Melton v. Melton*, 831 A.2d 646, 653-54 (Pa.Super. 2003) (internal

- 10 -

citations omitted).  In other words, the intent of the parties is generally the writing itself.  ***Kripp v. Kripp***, 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004) (internal citations omitted).  "If left undefined, the words of a contract are to be given their ordinary meaning."  ***Id.*** (citing ***Pines Plaza Bowling, Inc. v. Rossview, Inc.***, 394 Pa. 124, 145 A.2d 672 (1958)).

Lost profits are the difference between the amount the claimant actually earned and the amount the claimant would have earned had the defendant not interrupted the claimant's business.  ***Smith v. Penbridge Associates, Inc.***, 655 A.2d 1015 (Pa.Super. 1995).  A court may award damages for lost profits where the claimant introduces sufficient evidence to permit a reasonably certain estimate of the amount of anticipated profits.  ***Jahanshahi v. Centura Development Co., Inc.***, 816 A.2d 1179 (Pa.Super. 2003).  "Damages for lost profits…may not be awarded when the evidence leaves the trier of fact without any guideposts except…speculation."  ***Merion Spring Co. v. Muelles Hnos. Garcia Torres, S.A.***, 462 A.2d 686, 695 (Pa.Super. 1983).  "A mere possibility that the plaintiff might have made a profit…will not justify damages based on the assumption that the profit would have been made."  ***Scobell Inc. v. Schade***, 688 A.2d 715, 719 (Pa.Super. 1997) (quoting ***Aiken Industries, Inc. v. Estate of Wilson***, 477 Pa. 34, 42, 383 A.2d 808, 812 (1978), *cert. denied*, 439 U.S. 877, 99 S.Ct. 216, 58 L.Ed.2d 191 (1978)).

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinions of the Honorable Gary S. Glazer, we conclude Mands' issues merit no relief. The trial court fully and properly supported its decision. (*See* Trial Court Opinion, filed January 15, 2015, at 1; Opinion in Support of Order Denying Post-Trial Relief, filed November 14, 2014, at 1-2; Findings of Fact and Conclusions of Law, filed October 27, 2014, at 1-9) (finding: **(1)** contract incorporated DBA provisions, requiring submission of certified payrolls and use of union labor; Mands presented no evidence of oral modification of contract to allow for nonunion labor; Mands was aware of requirement to pay employees prevailing wages; Mands did not pay employees prevailing wages; Mands should have paid employees $26,987.00 in labor for portion of contract completed before termination, but Mands paid employees only $8,965.60; Mands also failed to submit certified payrolls to Domus and failed to obtain union labor; Mands' noncompliance with DBA provisions incorporated in contract justified Domus' termination of Mands for cause; **(2)** details of contract precluded any recovery for lost profits; Mands failed to proffer valid claim for recoverable damages). Accordingly, we affirm on the basis of the trial court's opinions.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2015

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| MANDS CONSTRUCTION CO. | : | OCTOBER TERM, 2012 |
| Plaintiff | : | NO. 01129 |
| v. | : | COMMERCE PROGRAM |
| DOMUS, INC., and PHILADELPHIA REDEVELOPMENT AUTHORITY | : | 94 EDA 2015 |
| Defendants | : | |



## OPINION

GLAZER, J.                                                                                   January 15, 2015

Plaintiff, Mands Construction Co., appeals from this court's Order of November 14, 2014, in which the court denied plaintiff's motion for new trial. In support of that Order, the court issued an Opinion which incorporated the court's October 27, 2014 Findings-of-Fact and Conclusions-of-Law, copies of which are attached hereto. For the reasons contained therein, the court respectfully requests that its November 14, 2014 Order be affirmed on appeal.

BY THE COURT:

GLAZER, J.



Mands Construction Company Vs Domus, Inc.-OPFLD

12100112900086

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| MANDS CONSTRUCTION CO. | OCTOBER TERM, 2012 |
| Plaintiff | NO. 01129 |
| v. | COMMERCE PROGRAM |
| DOMUS, INC., and PHILADELPHIA REDEVELOPMENT AUTHORITY | CONTROL NO. 14110860 |
| Defendants | |

**DOCKETED**

NOV 1 4 2014

C. HART
CIVIL ADMINISTRATION

**ORDER**

AND NOW, this 14th day of November, 2014, upon consideration of the Motion for a

New Trial of plaintiff, Mands Construction Co., it is hereby

**ORDERED**

that the said Motion is **DENIED**.

BY THE COURT:

GLAZER, J.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| MANDS CONSTRUCTION CO. | : | OCTOBER TERM, 2012 |
| Plaintiff | : | NO. 01129 |
| v. | : | COMMERCE PROGRAM |
| DOMUS, INC., and PHILADELPHIA REDEVELOPMENT AUTHORITY | : | CONTROL NO. 14110860 |
| Defendants | : | |

DOCKETED

NOV 14 2014

C. HART
CIVIL ADMINISTRATION

## OPINION

GLAZER, J.                                                                    November 14, 2014

The issues in this case have been fully developed through extensive discovery and a one day bench trial held before this court on August 25, 2014. The parties submitted their proposed Findings of Fact and Conclusions of Law on October 19, 2014 and October 23, 2014. This court entered a finding in favor of defendant and issued Findings of Fact and Conclusions of Law on October 27, 2014. The facts and reasoning are hereby incorporated by reference. On November 7, 2014 plaintiff filed a post-trial motion alleging that the court erred in ruling for defendant. For the reasons set forth below, the post-trial motion of plaintiff is denied.

## DISCUSSION

Upon a written motion for post-trial relief, a court may affirm, modify or change its original decision. Pa.R.C.P. 227.1(a)(4). The purpose of Rule 227.1 is to provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review. See Pa.R.C.P. 227.1 cmt. 1.b. (1995)(cited by Chalkey v. Roush, 569 Pa. 462, 494 (Pa. 2002)).

Plaintiff alleges that this court erred in finding for defendant by arguing that the Davis Bacon Act did not apply to the contract between the parties, that plaintiff did not violate the Davis Bacon Act, that plaintiff proved damages, and that defendant was not justified in terminating plaintiff. This court, based upon credible evidence and the law, disagrees.

This court found that the parties were required to comply with the Davis Bacon Act. As a result, plaintiff violated the Davis Bacon Act by failing to pay prevailing wages and by failing to produce copies of certified payroll reports. Therefore, defendant was justified in terminating plaintiff for cause. Finally, plaintiff failed to proffer a valid claim for recoverable damages.

Plaintiff has essentially asked this court to re-evaluate the credibility of witnesses and reassess its findings. However, plaintiff offers no legal arguments or citations to the record to support its motion.[1] This court's October 27, 2014 opinion fully outlined its reasons for finding in favor of defendant. Plaintiff's boilerplate motion is meritless, and therefore, the motion for a new trial is denied.

BY THE COURT:

GLAZER, J.

---

[1] After trial had concluded, but prior to this court publishing its Findings of Facts and Conclusions of Law, plaintiff attempted to introduce evidence that was not proffered during trial.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| MANDS CONSTRUCTION CO. | : | October Term, 2012 |
| | : | |
| v. | : | NO. 00120 |
| | : | |
| DOMUS, INC. | : | CIVIL ACTION |

**DOCKETED**

OCT 2 7 2014

C. HART
CIVIL ADMINISTRATION

## ORDER

AND NOW, this  27th  day of  October  , 2014, it is hereby

**ORDERED**

that a finding is entered in favor of the defendant, Domus, Inc., and against plaintiff,

Mands Construction Co.

BY THE COURT:

GLAZER, J.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| MANDS CONSTRUCTION CO. | : | October Term, 2012 |
|---|---|---|
| v. | : | NO. 001120 |
| DOMUS, INC. | : | CIVIL ACTION |

## FINDINGS OF FACT

AND NOW, this 27th day of October, 2014, it is hereby

## ORDERED

that this court finds as follows:

1. The project at issue in this case concerns the renovation of 75 units in the Mantua section of Philadelphia. [N.T. pp. 10, 119].[1]

2. The scope of this project called for each unit to be demolished and then revitalized, along with the addition of a community center. [N.T. p. 119].

3. The project was federally funded. [N.T. pp. 119-20].

4. As a result of the federal funding, the Davis-Bacon Wage Act applies, which requires certified payrolls to be filed, ensures that certain wage standards are met, and limits the amount of hours employees can be required to work. [N.T. p. 120].

5. Michael Thorpe ("Thorpe") is the chairman of the board of directors of Mount Vernon Manor, the owner of 125 units of affordable housing located in the community of Mantua. [N.T. p. 10].

---

[1] All testimony occurred on August 25, 2014.

1

6. Domus, Inc. ("Domus") was awarded a no-bid contract for the project, and M\_\_ds Construction Co. ("Mands") was awarded the subcontract. [N.T. p. 11].

7. The nature of the subcontract was for the selective demolition of the 75 apartments. [N.T. p. 28].

8. Thorpe asked Gerald Washington ("Washington"), vice-president of operations for Mands Construction, to assist and to hire people from the Mantua community to work on the project. [N.T. pp. 11-12, 23].

9. The project was not competitively bid; Washington felt that he could complete the work for less than $300,000 and bid that amount. [N.T. pp. 30-31].

10. Thorpe was aware that the Philadelphia Redevelopment Authority ("PRA") administered federal funds for the project. [N.T. p. 20].

11. Thorpe was also aware that the project was funded in part by a community revitalization grant from the United States Department of Housing and Urban Development and by law, Domus was required to allocate a certain percentage of jobs to people in the community. [N.T. pp. 17-20].

12. Thorpe acknowledged that Domus was awarded the job because of their resources and proven track record on completing jobs similar to the one at issue here. [N.T. p. 16].

13. The contract between Mands and Domus was signed on March 8, 2012. [P-2].

14. Per the terms of the contract, Mands was required to furnish Union labor and other materials to perform the demolition. [N.T. p. 64].

15. The scope of the work is set out in Article 8 of the contract, which also states in capital, bold letters that certified payrolls are required. [D-1, p. 10].

2

16. According to Article 11.12 of the contract, Mands was to furnish weekly cei___ied payroll reports as a condition precedent to receiving payment. [D-1, p. 13].

17. In addition to the specific contract language, Ms. Ella Tate of Domus explained the certified payroll requirement to Washington at the beginning of the contract. [N.T. pp. 73-75].

18. Shortly after signing the contract, Washington learned that the contract required the use of union labor. [N.T. p. 12].

19. After several meetings regarding this issue, Anthony Fullard ("Fullard") proposed a solution where Washington could be on the job and be union for this specific project only, which satisfied the requirement that Mands' employees be members of a union. [N.T. pp. 13, 14].

20. On or about May 30, 2012, the parties modified the original contract so that Domus would pay union benefits starting from week two of the project and deduct them from Mands' contract. [D-3].

21. Domus refused to agree to a scenario in which the demolition would be carved out of the Domus contract. [N.T. p. 13].

22. Fullard assisted Domus and Mands in trying to resolve issues with Laborer's Union Local 332. [N.T. p. 97].

23. After two months of negotiations, Fullard was unable to reach an agreement with the union for a job-specific arrangement. [N.T. pp. 99-100].

24. Fullard stressed to Washington that he needed to pay the prevailing wages to employees. [N.T. p. 101].

25. Mands started the job on Thursday, September 6, 2012. [N.T. pp. 42, 88].

3

26. On Friday, September 7, 2012, the second day of the job, a representative of the PRA came to the job and began interviewing Mands' employees and explaining to them the rate of pay. [N.T. p. 88].

27. This representative of the PRA also posted the wage rates inside the trailer where the employees signed in and out of work each day. [N.T. p. 42].

28. At this point, two days into the project, Washington was still unaware of the exact rate of pay and told the PRA representative that he would pay the prevailing rate until the union situation was resolved. [N.T. p. 89].

29. Several of Mands' employees called the PRA and complained that they were not being paid the prevailing wage. [Exhibit D-12, PRA 0019].

30. Brian Sheed ("Sheed") and Anthony Rosser ("Rosser"), two of Mands' employees, told the job superintendent that they were getting paid $100 a day. [N.T. pp. 146-147].

31. Washington claimed he terminated the employees because he was not satisfied with their work performance. [N.T. pp. 44-47].

32. Washington asserted that although he fired the employees on Monday, he told them in advance over the weekend that they would be fired on Monday. [N.T. pp. 86-87].

33. Washington admitted that Ms. Ella Tate, Domus' Payroll Compliance Officer, gave him a packet of information regarding how to submit certified payrolls. [N.T. pp. 76-77].

34. Washington acknowledged that he knew that he was required to submit the certified payrolls using standard WH-347 forms from the Department of Labor because this was a federally funded job. [N.T. p. 77].

4

35. Washington understood that he was required to fill out forms certifying under oath that he paid his employees in accordance with the Davis-Bacon Wage Act, yet did not produce copies of any of these certified payroll forms at trial. [N.T. p. 78].

36. A representative of the PRA delivered several paychecks to the fired employees. [N.T. p. 78].

37. Washington explained to the employees he terminated that he was unable to pay them the prevailing wage. [N.T. pp. 86-87].

38. The rate for unskilled laborers on the job was $25.15 per hour and the fringe benefits were $22.70 per hour. [N.T. p. 93].

39. Instead of paying his workers this rate and contributing fringe benefits to the union, Washington was writing gross checks for $47.85 because the employees were not union members. [N.T. p. 93-95].

40. Penalties for violating the Davis-Bacon Wage Act include tying up the company money as a whole, as well as the possibility of debarment. [N.T. pp. 120-121].

41. If a contractor is debarred, that contractor is placed on a list and is not allowed to do work for any specific agency. [N.T. p. 121].

42. Because approximately 80 percent of the work performed by Domus is based on federally funded projects, debarment would have a very big impact on Domus' business. [N.T. p. 121].

43. In order to verify that subcontractors' laborers are paid in accordance with the Davis-Bacon Wage Act, subcontractors are required to submit certified payroll forms. [N.T. pp. 121-122].

44. Domus never received any certified payrolls from Mands. [N.T. p. 122].

5

45. Thomas Pyle ("Pyle"), the project manager, created a chart to determine how much Mands should have been paying the employees if Mands was paying the prevailing wages. [D-11].

46. Based on this chart, Pyle estimated that at the prevailing rate, Mands should have paid the employees $26,987, yet Mands provided copies of only the fronts of checks that totaled only $8,965.60. [N.T. pp. 128-130].[2]

47. Washington turned over a payroll journal that showed he paid his employees a total of $6,094.60. [N.T. pp. 130-131].

48. Mands only completed approximately eight percent of the job. [N.T. p. 137].

49. Mands' labor costs for work on the $276,000 job would have been approximately $230,000, with $38,000 in dumpster costs deducted from the contract. [N.T. pp. 137-138].

50. The remaining $8,000 would have likely been spent on other expenses like gas and tools, leaving Mands with no profit. [N.T. p. 138].

51. Even though payment to Mands' employees was a condition precedent for payment to Mands by Domus, Mands never submitted an invoice to Domus for payment for anything. [N.T. pp. 132-133].

52. Mands never provided any evidence to prove compliance with the federal labor standard work rules, including paying the prevailing rates and submitting certified payrolls. [N.T. pp. 122, 139].

53. On September 19, 2012, Domus sent a termination letter to Mands, firing Mands for cause. [P-8].

---

[2] Plaintiff submitted a supplemental memorandum of law to this court on October 20, 2014, which included various exhibits. However, because these documents were not introduced at trial, which concluded on August 25, 2014, this court has declined to review this additional "evidence."

6

## CONCLUSIONS OF LAW

54.    The plaintiff, Mands Construction, has claimed that its termination was "for cause" under the contract. If the subcontractor is fired for cause, he/she is entitled to recover the difference between the subcontract sum and the subcontractor's expense in completing the work. [D-1, Article 7.2.1].

55.    Under a termination for convenience, the subcontractor is only entitled to recover the costs incurred for performing the work up until the date of the termination. [D-1, Article 7.2.2].

56.    Mands was terminated for violating the Davis-Bacon Act.

57.    Plaintiff is seeking damages for breach of contract and lost profits. However, plaintiff has not proven any damages or lost profits. The contract does not allow for recovery of lost profits.

58.    The contract provides that any modifications proposed by Mands must be approved by Domus. [D-1 at p. 16, Article 18.2].

59.    Both parties agreed to a modification of the contract whereby Domus would pay for the dumpsters on the site and deduct the cost from the total contract price. [D-1 at Exhibit D, Scope of Work].

60.    The contract was modified to expressly require Mands to "pay wages for workers and all related Union Fringes and Benefits to the Labor's [sic] Local directly" for the first week of work on the project, and to "pay the net amount due to [Mands'] workers." [D-1 at Exhibit D, Scope of Work].

7

61. The modification, signed by Domus, provided that Domus would pay union fringes and benefits directly the union starting from week two through completion of the project. [D-1 at Exhibit D, Scope of Work].

62. "An agreement prohibiting non-written modification may be modified by a subsequent oral agreement if the parties' conduct clearly shows an intent to waive the requirement that amendments be in writing." Accu-Weather, Inc. v. Prospect Communications, Inc., 435 Pa.Super. 93, 101, 644 A.2d 1251 (1994).

63. Plaintiff has not produced any evidence to prove that the contract was orally modified to allow Mands to use non-union labor to perform the work.

64. Because the job was federally funded, and because the contract states that all federal labor standard work rules apply, the parties were required to comply with the provisions of the Davis-Bacon Act. [D-1 at p. 14, Article 14.1.1].

65. The Davis-Bacon Act requires that local laborers and contractors are to be paid at a rate based on the prevailing wages determined by the Secretary of Labor for corresponding groups of workers. 40 U.S.C.A. § 3142(b).

66. Under the Davis-Bacon Act, contractors and subcontractors are required to submit certified payroll reports every week, and the contract required Mands to use HUD form WH-347 for the reports. [D-12, p. PRA 0073, Article 2-3; D-1, Article 11.12].

67. Form WH-347 requires that someone sign the payroll and certify that the information in the report is true. [D-12, p. PRA 0073, Article 2-3(b)].

68. The Davis-Bacon Act requires the principal contractor to ensure that the subcontractor complies with the applicable labor standards provisions. [D-12, pg. PRA 0068, Article 1-4).

8

69. The contract between Domus and Mands characterizes Domus as the principal contractor and Mands as the subcontractor. [D-1, pg. 1].

70. Mands did not pay prevailing wages to employees, thereby violating the Davis-Bacon Act.

71. Mands has not produced any copies of certified payroll reports, thereby violating the Davis-Bacon Act.

72. Because Mands never certified that the company had complied with the Davis-Bacon Act, and failed to furnish union labor as required under the express terms of the contract, Domus was justified in terminating Mands for cause.

73. Mands has not asserted a valid claim for any recoverable damages.

74. A finding is entered in favor of the defendant, Domus, Inc., and against plaintiff, Mands Construction.

BY THE COURT:

GLAZER, J.

9