J-A20018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EDWARD ECKER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION A/K/A AMTRAK, | |
| Appellee | |
| v. | |
| CONTROLLED F.O.R.C.E., INC., | |
| Appellee | No. 2360 EDA 2014 |

Appeal from the Judgment Entered September 9, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): January Term, 2013 No. 1226

| | |
|---|---|
| EDWARD ECKER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION A/K/A AMTRAK, | |
| Appellee | |
| v. | |
| CONTROLLED F.O.R.C.E., INC., | |
| Appellant | No. 2608 EDA 2014 |

Appeal from the Order Dated August 5, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): January Term, 2013 No. 1226

BEFORE:  DONOHUE, SHOGAN, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 05, 2015**

These are consolidated appeals.  Following our thorough review of the record, the parties' arguments, and the applicable law, we affirm.

Edward Ecker ("Ecker"), age fifty-three, was an Amtrak police officer who filed suit in this negligence action pursuant to the Federal Employers' Liability Action ("FELA"), 45 U.S.C. § 51, on January 15, 2013, against Amtrak, Appellee herein.  Ecker injured his shoulder on October 19, 2012, while participating in a defensive tactics training class taught by Controlled F.O.R.C.E., Inc. ("CF") in a training room of Amtrak's station at 30th Street in Philadelphia.[1]  After a four-day trial, a jury found in favor of Amtrak and CF on May 5, 2014.  Following the denial of his motion for a new trial, Ecker filed a notice of appeal at docket number 2360 EDA 2014.  When the trial court subsequently granted Amtrak's requested indemnification for the costs

---

[1]  Amtrak joined CF as an additional defendant on May 22, 2013.

- 2 -

of defense, CF filed a notice of appeal at docket number 2608 EDA 2014.[2]

On October 1, 2014, we consolidated the appeals *sua sponte*.

### Appeal by Ecker at 2360 EDA 2014

The trial court summarized the factual underpinnings of this case as follows:

> On May 31, 2012, Amtrak and [CF] entered into a contract for [CF] to teach several defensive training tactics courses to Amtrak police officers on Amtrak property. On October 19, 2012, [Ecker] attended the training class and injured his shoulder while performing a training exercise. [Ecker] claimed that he injured himself because the parties did not supply sufficiently thick mats on which he performed the training exercises. (*See* Complaint).

Trial Court Opinion, 3/13/15, at 2. At trial, Ecker described the occurrence of injury as follows:

> [Amtrak Police Officer] Harper happened to be standing in my location just around me. We looked at each other and we agree that let's give [the exercise] a try. So we turned around, got down on the floor with our backs up against each other. We attempted to do the exercise. I believe I got off the floor a little bit. Exactly how high, I have no idea; but at that point it was the very first time I tried it. I fell. Like, I was losing my balance. I threw my arm out instinctively to keep from falling off over to the side. So I just threw my arm out there.

N.T., 4/29/14, at 173. Ecker also testified that the training room "was poorly lit, dingy looking, dirty. Looked like nobody had been back there in

---

[2] Thus, CF is an appellee in the appeal filed by Appellant Ecker at docket number 2360 EDA 2014. CF is the appellant in the appeal it filed regarding the trial court's ruling that CF must indemnify Amtrak, Appellee therein, at docket number 2608 EDA 2014.

years." *Id*. at 167.  Ecker stated that he talked to the CF instructor about

the conditions in the training room, as follows:

> So I just said, mentioned to the instructor I thought that the flooring that was down seemed a little thin since I've been to many defensive tactics courses over the years and usually you do takedowns in defensive tactics.  Now I didn't know what to expect out of this class, but if it was like every other defensive tactics training I'd been to, I just believed that we were going to do some kind of takedowns.  And I thought that the flooring with the concrete floor, when you're—I mean, I mean, if I'm on patrol you take what you get.  You have no choice on that.  But if I'm in a controlled environment, I just think if I'm going to be taken down to the floor, I didn't think the carpeting or padding it had there was appropriate.

*Id*. at 168.

As noted, after a four-day jury trial, the jury found in favor of Amtrak

and CF.  Ecker filed a motion for a new trial on May 12, 2014, which the trial

court denied on June 19, 2014.  Subsequently, Ecker filed a notice of appeal

on July 15, 2014.[3]  Both Ecker and the trial court complied with Pa.R.A.P.

1925.

Ecker presents the following two issues in his appeal:

    I.    Did the trial court err when it precluded evidence of a prior similar accident in the same location that occurred shortly before Appellant's accident?

---

[3]  Because judgment had not been entered on the docket as required by Pa.R.A.P. 301, Ecker was directed to *praecipe* the trial court to enter judgment.  Judgment was entered on September 9, 2014, and the previously filed notice of appeal, therefore, is treated as filed after the entry of judgment.  *See* Pa.R.A.P. 905(a).

> II. Did the trial court err when it precluded evidence of subsequent remedial measures including preclusion of questions to [CF's] liability expert of subsequent remedial measures?

Ecker's Brief at 3 (full capitalization omitted).

Ecker's challenges are to evidentiary rulings by the trial court. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion or misapplication of the law. *Koller Concrete, Inc. v. Tube City IMS, LLC*, 115 A.3d 312, 316 (Pa. Super. 2015). "For a ruling on the admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Id*. "An abuse of discretion occurs where the trial court 'reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will.'" *Brady v. Urbas*, 111 A.3d 1155, 1161 (Pa. 2015) (citing *Commonwealth v. Wright*, 78 A.3d 1070, 1080 (2013)). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion . . . ." *Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.*, 77 A.3d 1, 11 (Pa. Super. 2013).

The above issues relate to the trial court's grant of CF's motions *in limine*. CF filed two motions *in limine* on April 11, 2014. The first sought to

preclude evidence of a prior injury sustained by Amtrak Police Officer Robert McCleary.[4] McCleary had injured his arm the day prior to Ecker's injury, while participating in the same training program. The second motion sought to preclude evidence of post-accident changes to the training room. Following oral argument, the trial court granted the motions on the first day of trial, April 28, 2014.

A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664 (Pa. Super. 2007). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014), *appeal denied*, ___ A.3d ___, 2015 WL 3500130 (Pa. filed May 27, 2015). A trial court's decision to grant a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." *Id*.

Ecker maintains that evidence of McCleary's prior injury was admissible, citing *DiFrancesco v. Excam, Inc.*, 642 A.2d 529, 535 (Pa. Super. 1994), in support. *DiFrancesco* was a products liability case where an injured pistol buyer brought an action against the seller, distributor, and manufacturer of the pistol. This Court determined that evidence of other

---

[4] At oral argument on the motion *in limine*, the potential witness McCleary was referred to as McThiery. N.T., 4/29/14, at 6.

accidental gun discharges, which were different models than the one that accidentally discharged and injured the buyer, were not so dissimilar as to render the evidence inadmissible. *Id*. at 535. Ecker also cites *Lockley v. CSX Transp., Inc.*, 5 A.3d 383, 395 (Pa. Super. 2010), suggesting that the impact of the challenged evidence was tempered by the trial court's instruction that evidence is admissible only if the prior accident is sufficiently similar to the incident involving the plaintiff and that it occurred under sufficiently similar circumstances. Ecker asserts that CF and Amtrak were put on notice that the environment was unsafe when the injury occurred to McCleary the day before Ecker was hurt. Ecker contends that whether to admit such evidence is a "fact-specific inquiry," and he acknowledges that the burden is on him, the party introducing the evidence, to establish the accident's similarity to the present incident. *Blumer v. Ford Motor Co*, 20 A.3d 1222, 1228–1229 (Pa. Super. 2011).

Ecker proffers that the trial court failed to consider the following factually relevant factors:

> 1) Both accidents occurred at the 30th Street Station training room;
>
> 2) the same Amtrak instructors were present and providing instruction to the groups at the time of the accidents;
>
> 3) the same [CF] instructor was present and providing instruction to the group[s] at the time of the accidents;
>
> 4) the accident occurred during the training class;

5)   both injuries involved trauma to an upper extremity that struck a concrete floor;

6)   both individuals received first aid from the instructors; and

7)   both cases were investigated by the same Amtrak [C]laims Agent[,] Barbara Maine[, whom Ecker] intended to call as a witness.

Ecker's Brief at 16.   However, Ecker fails to support these factors by any reference to the record.   Thus, they merely are bald allegations in his brief. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [an appellant's] claim." ***Irwin Union Nat. Bank & Trust Co. v. Famous***, 4 A.3d 1099, 1103 (Pa. Super. 2010).

CF responds that Ecker failed to meet his burden of showing that the two incidents had substantial similarity.   CF's Brief at 9.   CF mimics the holding of the trial court, explained below.   Amtrak asserts that Ecker failed to prove a "fact-based inquiry," maintaining that Ecker showed only that both injuries occurred in the same training class at the same location. Amtrak's Brief at 6.   Amtrack claims that Ecker failed to identify evidence of the circumstances surrounding the McCleary incident and avers that the fact that the two men suffered upper extremity injuries "is not indicative of similarity." ***Id***. at 7.

The trial court precluded evidence of McCleary's injury, holding that Ecker failed to establish that the prior accident was substantially similar to the instant incident.   The trial court stated that the only evidence Ecker submitted was the deposition of Amtrak Police Captain Lee O'Brien

("O'Brien"). The trial court determined that while O'Brien stated that he received a report concerning injury to McCleary, he "had no other details and was not even certain when the other incident occurred." Trial Court Opinion, 3/13/15, at 5.

The record supports this assessment by the trial court. O'Brien, who controlled the Mid-Atlantic Amtrak Police Department, Patrol Division, was deposed on December 2, 2013. Lee O'Brien Deposition, 12/2/13; Ecker's Answer to Motion *in Limine*, 4/21/14, at Plaintiff's Exhibit 2. Ecker's counsel asked O'Brien, who arranged the defense tactics course for Amtrak, if he "receive[d] notice of any individuals reporting that they had an injury during class," and he replied, "Yes." *Id*. at 44. "I had a report of an injury where an officer fell off the surface and injured his elbow, and then I received a report of an injury with Officer Ecker." *Id*. Counsel asked if the elbow injury occurred before or after Ecker's injury, and the witness answered, "I don't recall, but I believe it was before." *Id*. at 46. O'Brien testified that "[a]ccording to policy, there's an investigation done when there's an officer injury." *Id*. at 45–46. He continued, "The only time that I would be notified is if the accident investigation or the incident investigation determined that it was part of the class that got him injured or it was an unsafe condition." *Id*. at 46. Counsel inquired, "Were you notified of those things?" and O'Brien responded, "No." *Id*.

The trial court held that Ecker "failed to provide . . . the trial court **with any definitive evidence** that the other incident was similar to this one and even when the other incident occurred." Trial Court Opinion, 3/13/15, at 5 (emphasis added). We agree. We recently reiterated that it is the burden of the proponent of evidence, "to establish, to the court's satisfaction, the similarity between other accidents and the subject accident before this evidence could have been admitted for any purpose." **Parr**, 109 A.3d at 698–699 (citing **Hutchinson v. Penske Truck Leasing Co.**, 876 A.2d 978 (Pa. Super. 2005)). During argument before the trial court, Ecker failed to show the required similarity between Ecker's injury and McCleary's injury. N.T., 4/29/14, at 6–8. The trial court did not abuse its discretion in concluding that Ecker failed to sustain his burden of establishing the requisite similarity.[5]

Ecker next assails the trial court's decision to preclude Ecker's questioning of CF's expert witness in the field of police training, Anthony Grano ("Grano"), former CF instructor and owner, regarding Amtrak's use of protective floor mats subsequent to Ecker's injury. As noted *supra*, on April 11, 2014, CF filed a motion *in limine* to preclude evidence of post-accident

---

[5] In addition, we note that Ecker admitted that he failed to include McCleary as a potential witness in his Pretrial Memorandum and Supplemental Pretrial Memorandum, in violation of the trial court's April 23, 2013 Case Management Order advising that "[c]ounsel should expect witnesses not listed [in the pretrial memorandum] to be precluded from testifying at trial." Order, 4/23/13.

changes to the training room. Amtrak joined in this motion, and the trial court granted it on April 28, 2014. Ecker contends that he should have been permitted to discuss the fact that "several months" after his injury, "Amtrak placed padded mats in the [training] room for future training groups." Ecker's Brief at 18.

Ecker submits that the location of both accidents was the 8th floor of Amtrak's 30th Street Station. He describes the location as an open storage space that was in disrepair and had wires hanging and broken chairs. The floor was made of concrete and "was not proper for individuals for doing tactics that required contact with the floor. The only protection on the floor was a rug which was identified to be like a blanket." Ecker's Brief at 18. Ecker posits that several months after his injury, Amtrak placed padded mats in the room for future training groups. *Id*. Ecker argues that Pa.R.E. 407 permits evidence of subsequent remedial measures with a proper limiting instruction when the measures are offered for impeachment. He maintains that he desired to impeach Grano, who, Ecker submits, was accepted as a "13th hour expert without any pretrial disclosure." Ecker's Brief at 19.

In support of its decision granting CF's and Amtrak's motion *in limine*, the trial court cited Pa.R.E. 407, which provides as follows:

**Rule 407. Subsequent Remedial Measures**

When measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the

- 11 -

subsequent measures is not admissible against that party to prove:

- negligence;

- culpable conduct;

- a defect in a product or its design; or

- a need for a warning or instruction.

The trial court underscored, however, the Rule's final provision that:

the court may admit this evidence for another purpose such as impeachment or—**if disputed**—proving ownership, control, or the feasibility of precautionary measures.

Pa.R.E. 407 (emphasis added). The trial court considered Pa.R.E. 403, in tandem, which states as follows:

**Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

Our Supreme Court has stated:

The admission of [evidence of subsequent remedial measures] cannot be defended on principle. It is not more likely to show that there was negligence before the accident than that the occurrence of the accident first suggested the use of methods or appliances not before thought of; it applies to conduct before an accident a standard of duty determined by after-acquired knowledge; it punishes a prudent and well-meaning defendant who guards against the recurrence of an accident he had no reason to anticipate, or who out of a considerate regard for the

safety of others exercises a higher degree of care than the law requires.

***Duchess v. Langston Corp.***, 769 A.2d 1131, 1137 n.7 (Pa. 2001) (citation omitted); ***see also Columbia & Puget Sound RRCo. v. Hawthorne***, 144 U.S. 202, 207-208 (1892) (describing evidence of remedial measures as incompetent in that the taking of such precautions against the future is "not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and create a prejudice against the defendant."); ***Hoffmaster v. County of Allegheny***, 550 A.2d 1023, 1028 (Pa. Cmwlth. 1988) (stating that "evidence of other accidents that occur subsequent to that upon which the litigation is brought is not admissible to show knowledge of a condition prior to an accident.").

CF maintains that the trial court determined that Amtrak's placement of thicker mats in the training room was irrelevant because CF was not the party who altered the flooring, in that CF's contract had expired, and CF no longer was involved in training Amtrak employees. Amtrak points out that the Rule's exclusion of evidence of subsequent remedial measures was subject to certain exceptions, one of which was feasibility. That exception, however, presupposes that feasibility is contested by the party against whom the evidence is offered. ***Duchess***, 769 A.2d at 1134. Amtrak posits that was not the case here. "Neither Amtrak nor [CF] ever contended that

some other, thicker floor cover could not have been used during the training." Amtrak's Brief at 9. As Amtrak's counsel argued to the trial court: "We're not taking a position that this was not feasible. We're taking a position we just didn't do it." N.T., 4/29/14, at 23. Amtrak avers that Grano made the same point when, during cross-examination by Ecker's counsel, he acknowledged not only the feasibility of using mats during [Ecker's] training, but also CF's use of mats in other training classes:

> Q. Now, in terms of the feasibility, meaning was it possible to have mats placed down on the floor at 30th Street Station on October 19, 2012?
>
> A. . . . Is it possible?
>
> Q. Yes.
>
> A. Sure, it's possible.

N.T., 5/1/14, at 11. As Amtrak explains, it did not challenge the feasibility of putting thicker padding on the training floor. Therefore, because the feasibility of precautionary measures was not in dispute, "the trial court properly precluded evidence of Amtrak's replacement of the existing flooring with thicker mats after [Ecker's] alleged injury." CF's Brief at 12.

Since Amtrak did not contest the feasibility of precautionary measures, the issue was not in dispute. Thus, pursuant to Pa.R.E. 407, the trial court properly precluded Ecker from introducing into evidence the fact that Amtrak replaced the existing floor covering with thicker mats after Ecker's injury because such evidence would not constitute impeachment evidence.

- 14 -

Moreover, as found by the trial court, the subsequent remedial measures were not relevant to CF because CF did not alter the floor's surface, and CF was not involved in training Amtrak employees at the time the floor was altered. Trial Court Opinion, 3/13/15, at 8. We conclude the trial court did not abuse its discretion in the evidentiary rulings identified by Ecker.

**Appeal by CF at 2608 EDA 2014**

On June 2, 2014, Amtrak filed a motion for counsel fees claiming that CF was contractually obligated to indemnify Amtrak for the costs of defense in light of the jury's verdict absolving Amtrak of liability. CF opposed the motion, asserting the plain language of the contract. On August 5, 2014, the trial court granted Amtrak's June 2, 2014 request for indemnification for costs of defense. CF appealed this order on September 3, 2014, at docket number 2608 EDA 2014. Both CF and the trial court complied with Pa.R.A.P. 1925.

CF presents one question in its appeal, as follows:

> Whether the trial court erred in granting Amtrak's motion for assessment of defense fees and costs and declaring that [CF] shall pay the reasonable defense fees and costs incurred by Amtrak in the underlying matter where the jury specifically exonerated [CF] from liability in connection with the underlying matter and where the contract language provides for [CF's] indemnification of Amtrak only for injuries arising out of, caused by or resulting from materials or services provided by [CF]?

CF's Brief at 4.

CF maintains that Amtrak relied on the language of paragraph twenty-four of its contract with CF, which provides as follows:

24. Indemnification.

A. Contractor agrees to defend, indemnify and hold harmless Amtrak, its officers, directors, employees, agents, successors, assigns and subsidiaries (collectively, "Indemnified Parties"), from and against any claims, losses, liabilities (including without limitation environmental liabilities), penalties, fines, causes of action, suits, costs and expenses incidental thereto, (including costs of defense and attorneys' fees)(collectively "Claims"), which any of the Indemnified Parties may hereafter incur, be responsible for or pay as a result of breach of warranty, injury or death of any person, or damage to or loss (including loss of use) of any property, including of the parties thereto, arising out of or in any degree directly or indirectly caused by or resulting from materials or deliverables supplied by, or from activities of, or Services performed by Contractor, Contractor's officers, employees, agents, subcontractors, or any other person acting for or with the permission of Contractor under the Contract, or as a result of Contractor's failure to perform its obligations in compliance with the Contract Documents.

Defendant's [Amtrak's] Answer to Plaintiff's Complaint with New Matter, Exhibit C, 3/12/13, Amtrak Services Contract, 1/6/10, ¶ 24.

CF posits that Amtrak relied on *Mace v. Atlantic Ref. & Mktg. Corp.*, 785 A.2d 491 (Pa. 2001), in asserting that it was entitled to defense costs because it had been absolved of liability in the underlying matter. CF avers that Amtrak ignored the fact that CF, likewise, was absolved from liability. CF contends that it argued to the trial court that "there must be some connection to CF's activities or services in order to trigger its obligation to indemnify." CF's Brief at 11. CF suggests the trial court dismissed this fact and instead reasoned that the complaint and lawsuit were "a claim" that Ecker's injury resulted from CF's training class. *Id*. CF argues that the trial court's interpretation of the contract language cannot be reconciled with

*Lane v. Commonwealth of Pennsylvania*, 954 A.2d 615 (Pa. Super. 2008). The *Lane* Court examined the relevant contract language therein and concluded that indemnification was not required. CF attempts to draw similarities to *Lane*.

CF avers that it did not intend to assume liability for all injuries associated with its training program regardless of whether it caused those injuries. Rather, CF posits that it agreed to defend and indemnify Amtrak only for injuries "arising out of or in any degree directly or indirectly caused by or resulting from materials or deliverables supplied by, or from activities of or [s]ervices performed by" CF. CF's Brief at 15–16. CF suggests that like the indemnitor in *Lane*, and in contrast to the indemnitor in *Mace*, the jury absolved CF from any liability. It asserts that the jury verdict is conclusive of the effect of this contractual language. *Lane*, 954 A.2d at 622.

Amtrak urges that the trial court properly discerned the intent of the parties from the contract itself. It argues that the words of the contract are clear and unambiguous. Here, the jury assigned no liability to Amtrak for the injuries and damages allegedly suffered by Ecker during the training. Amtrak posits that applying basic contract principles, it is clear that Amtrak is entitled to indemnification because Ecker's claims, causes of action, and alleged injuries arose "out of or are to some degree directly or indirectly caused by or resulting from the services performed by" CF. Amtrak's Brief at 4.

Amtrak refers to the ***Perry-Ruzzi*** rule. This reference is to ***Perry v. Payne***, 66 A. 553 (Pa. 1907), and ***Ruzzi v. Butler Petroleum Co.***, 588 A.2d 1 (Pa. 1991), and the principle that any contractual provision requiring indemnification for one's own negligence must be expressed in "unequivocal terms." ***Mace***, 785 A.2d at 494. Amtrak contends that if the jury had found Amtrak causally negligent for Ecker's injuries, the provision would have had to pass muster under that rule. However, in the absence of such a finding, the "general principles of contract interpretation" rather than the ***Perry-Ruzzi*** rule are the proper standard for assessing CF's obligations under the contract provision. Amtrak's Brief at 5.

Amtrak looks to ***Mace*** for guidance in resolving this issue. Amtrak argues that CF's indemnification obligation is not dependent on it being found liable to Ecker. Rather, it proffers that whether CF was absolved of liability is irrelevant "with respect to its contractual obligation to indemnify Amtrak." Amtrak's Brief at 10. It contends that CF's reliance on ***Lane*** is misplaced, and that ***Mace*** controls.

In holding that its award of attorneys' fees was proper, the trial court referred to the May 31, 2012 Amtrak Services Contract between CF and Amtrak. The trial court examined paragraph twenty-four quoted above and concluded that the indemnification provision applied. The trial court stated:

> The Supreme Court of Pennsylvania has held that the jury verdict determines the standard that the trial court must use to interpret an indemnification provision. Ruzzi v. Butler Petroleum Co., 527 Pa. 1, 7, 588 A.2d 1, 4 (1991) (reaffirming Perry v.

<u>Payne</u>, 217 Pa. 252, 66 A. 553 (1907)).  If the jury had found that Amtrak was negligent for [Ecker's] injuries and damages, then the "Perry-Ruzzi" rule would apply.  This rule provides that "If a party seeks to indemnify itself against its own negligence, the language seeking to do so in the indemnification provision must be clear and unequivocal."  <u>Mace v. Atl. Ref. Mktg. Corp</u>., 567 Pa. 71, 76, 785 A.2d 491, 494 (2001).

In contrast, if the jury finds the indemnified party not negligent, then the trial court is to interpret an indemnification provision using "general principles of contract interpretation." <u>Mace</u>, 567 Pa. at 79.  In particular, the trial court is to "ascertain and give effect to the intent of the contracting parties."  ***Id***. at 80 citing <u>Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd, 559 Pa. 56, 65, 739 A.2d 133, 137 (1999) (citations omitted</u>).  Further, "when the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone."

\* \* \*

The plain language of the contract states that [CF] "agrees to defend, indemnify and hold harmless Amtrak ... against any <u>claims</u> ... which Amtrak may hereafter incur, be responsible for, or pay <u>as a result of injury</u> or death of any person ... <u>arising out of or in any degree directly or indirectly caused by</u> *or* <u>resulting from materials or deliverables supplied by or from activities of, or Services performed bv Contractor</u>.

Parsing out the phrases in the indemnification provision reveals that it applies.  The Complaint and resulting lawsuit are undisputedly a "claim."  The evidence at trial demonstrated that Mr. Ecker injured himself while performing a training exercise and went to the hospital for treatment.  Therefore, the "claim" is "a result of injury" that "ar[ose] out of or any degree directly or indirectly caused by" the training classes that Appellee [CF] conducted.

Appellant [CF] argues that it is not obligated to indemnify Amtrak because the jury did not find that [CF] was negligent. The indemnification provision in the Service Contract is not so limited.  The parties agreed in the Service Contract to a much broader indemnification provision, one in which [CF] must indemnify Amtrak for any claim in which an individual suffered

an injury in some manner connected to the services [CF] performed. This provision is not limited to [CF's] negligence[,] and using general principles of general contract construction, the trial court could not interpret it in such a limited manner.

Trial Court Opinion, 3/13/15, at 9–10 (internal citations omitted)(emphases in original). We agree with the trial court's analysis and conclude the trial court properly ordered CF to indemnify Amtrak for its expenses pursuant to the service contract between Amtrak and CF.

Judgment entered September 9, 2014, is affirmed. Order entered August 5, 2014, is affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015